THIRD DIVISION

No. 1-10-0424

| | | |
|---|---|---|
| MARILYN GANDY, | ) | Appeal from the Circuit Court of |
| | ) | Cook County |
| Plaintiff-Appellee, | ) | |
| | ) | No. 05 M1 723028 |
| v. | ) | No. 06 CH 12045 |
| | ) | No. 06 CH 14953 |
| SHAMEKIA KIMBROUGH, WM SPECIALTY | ) | |
| MORTGAGE, LLC, ARGENT MORTGAGE | ) | Honorable Daniel A. Riley, |
| COMPANY, LLC, and CHASE HOME | ) | Judge Presiding. |
| FINANCE, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |
| (Salaam Ghafir, American Home Loan, Mark | ) | |
| Mitchell, Gregory Wilson, Tristar Title, and | ) | |
| Unknown Owners and Nonrecord Claimants, | ) | |
| | ) | |
| Defendants). | ) | |

JUSTICE MURPHY delivered the opinion of the court:

This appeal involves the resolution of three consolidated actions concerning real property

located at 7941 South Laflin Street, Chicago, Illinois (Laflin property). Defendant Shamekia

Kimbrough filed a forcible detainer action against plaintiff, Marilyn Gandy, on September 23,

2005, seeking possession of the Laflin property and payment of $782 in rent. On June 19, 2006,

Gandy sought to quiet title to the Laflin property in her name. Gandy also sought other relief

based on claims of unconscionability and unjust enrichment. Gandy included Kimbrough, Salaam Ghafir, American Home Loan, Mark Mitchell, attorney Gregory Wilson, and Tristar Title as named defendants.

On July 26, 2006, WM Specialty Mortgage, LLC, assignee of Argent Mortgage Company, LLC, filed the third suit involved in this case. WM Specialty Mortgage filed a complaint to foreclose the mortgage on the Laflin property against Gandy, Kimbrough, Kimbrough's husband Moses Smith III, and Specialized Loan Servicing, LLC. On August 30, 2006, Gandy's motion to consolidate the three actions was granted and the consolidated action was heard in the chancery division of the circuit court of Cook County.

Following discovery, Gandy and Kimbrough filed cross-motions for summary judgment. The trial court denied Kimbrough's motion and granted Gandy's motion. The court found that Kimbrough was not a *bona fide* good-faith purchaser for value of the Laflin property and that an equitable mortgage existed between Gandy and Ghafir. A comprehensive order was prepared by the parties and entered on January 11, 2010, and a judicial deed was issued conveying the Laflin property to Gandy.

On appeal, Kimbrough argues that the trial court erred in finding that she was not a *bona fide* purchaser for value and she should take title to the Laflin property free and clear of any equitable interests claimed by Gandy. Kimbrough also contends that the trial court erred in finding there was no genuine issue of material fact concerning the conveyance from Gandy to Ghafir and whether that transaction constituted an equitable mortgage or an actual conveyance of the Laflin property. Defendants WM Specialty Mortgage, LLC, Argent Mortgage Company,

LLC, and Chase Home Finance, collectively the mortgagee, also sought reversal of the trial court's order and adopted Kimbrough's arguments and brief. For the following reasons, we affirm the findings of the trial court.

## I. BACKGROUND

### A. The Pleadings

#### 1. Kimbrough's Forcible Use and Detainer Action

Kimbrough filed her forcible use and detainer action against Gandy, seeking to evict Gandy from the Laflin property and recover $782 in unpaid rent on September 23, 2005. Following Gandy's appearance and jury demand, Kimbrough filed a motion for use and occupancy. Kimbrough asserted that she was the owner of the Laflin property and Gandy had been occupying the property without paying rent. Attached to the motion were an affidavit completed by Kimbrough and a letter sent to Gandy on August 29, 2005, indicating that rent would be $1,300 per month and that her alleged right to possession of the Laflin property was based on an invalid agreement with Ghafir.

In response, on January 23, 2006, Gandy filed a motion demanding strict proof and alleging that her right to possession and claimed prepaid rent were pursuant to a written lease. In support, Gandy attached a copy of her lease with Ghafir. She also attached a copy of a cashier's check payable to Ghafir on her behalf for $18,400, the amount she claimed was for two years' prepaid rent at $750 a month. Based on this information, Gandy also filed a motion to dismiss Kimbrough's complaint.

Attached to her response to the motion to dismiss, Kimbrough provided a copy of the

warranty deed for the Laflin property entered between her and Ghafir. The trial court denied the motion to dismiss and granted the motion for use and occupancy, ordering Gandy to pay Kimbrough rent during the pendency of the action. On June 19, 2006, Gandy filed a motion to reconsider that order alleging that she believed she was the victim of fraud and attaching a copy of her quiet title action. Gandy also sought consolidation of the two causes of action both in her motion for reconsideration and in a separate motion to consolidate on August 1, 2006, which was granted on August 30, 2006, with the actions being further consolidated with the foreclosure action in January 2007.

## 2. Plaintiff's Quiet Title Action

On June 19, 2006, Gandy filed her action to quiet title to the Laflin property. Gandy alleged that she was the sole legal titleholder of the Laflin property based on her deed recorded in 2001 when she inherited the property from her father free of any mortgage. A former employee of American Home Loans and friends with current employees there, Gandy sought financing to pay for home improvements. Mark Mitchell, a senior loan officer, told Gandy that she did not have sufficient credit, but provided a surrogate buyer, Ghafir, who would secure a mortgage for the home in return for cash payment and rent.

Gandy claimed that attorney Gregory Wilson accompanied her to First American Title Company on July 26, 2004, to complete what she thought was a refinancing of her home. Ghafir secured a $76,500 mortgage from American Home Loans on that date. Gandy alleged that she entered into an option to repurchase the home from Ghafir and had entered into a lease with Ghafir to remain in the home. However, in September 2005, Kimbrough sought rent payments

from Gandy as the alleged new owner of the Laflin property.

Gandy sought to quiet title against Kimbrough, Ghafir and any other claimants, claiming that the deed transfer to Ghafir should be considered an equitable mortgage and not a formal conveyance of real property. Gandy also claimed that the deed transfer from Ghafir to Kimbrough should be voided based on unconscionability. Gandy alleged that Ghafir was aware of Gandy's continued presence in the building and that he knew of the limited nature of the interest he held as well as the fact her interest in the property would be clearly evident if the sophisticated parties and brokers conducted basic research. She also asserted that the discrepancy in the terms of the agreements between her arrangement and that of Ghafir and Kimbrough demonstrated that she was given a highly disadvantageous equitable loan. Gandy's third claim was for unjust enrichment based on the realization of great benefits based on the discrepancies in values.

### 3. WM Specialty Mortgage, LLC's Foreclosure Action

On July 26, 2006, WM Specialty Mortgage filed its foreclosure action against Kimbrough, Gandy, and others. It alleged that Kimbrough and her husband executed a mortgage to WM Specialty Mortgage as assignee of Argent Mortgage Company, in the sum of $136,000 on August 22, 2005. The complaint further alleged that on April 1, 2006, the Kimbroughs defaulted on the mortgage and $138,749.39 was due WM Specialty Mortgage.

### B. Discovery

At some point during litigation, American Home Loans ceased operations, reportedly without any assets. It was not made a party to the action. Further, neither Mitchell nor Price

could be located to be served and deposed. Therefore, there is no evidence of record from American Home Loans or its employees involved in the transaction other than the testimony of the parties and the loan and sale documents.

### 1. Gandy Deposition

Gandy testified that she was born and reared in the Laflin property and lived there most of her life. She had lived there since 2002 after she inherited it from her father. While there was no mortgage on the Laflin property, Gandy talked with Donald Price and Mark Mitchell of American Home Loans about refinancing so that she could renovate her kitchen and bathroom. Gandy had worked for American Home Loans for approximately three months the prior year and Price was recommended by her friend Renee Riggins, who worked at American Home Loans. Price and Mitchell informed her that her credit was not sufficient to qualify for financing, but they could set up a surrogate buyer transaction to achieve her funding goal.

Under this plan Gandy sold the Laflin property to Ghafir on July 26, 2004, for approximately $71,000. Gandy testified that she used $13,000 to pay off a debt to her credit union and $7,000 for consumer debt. She paid home owner's insurance of $864 and renter's insurance of $250 for a year. Gandy understood that rent to be paid Ghafir would be $750 a month and she gave Ghafir a check for $18,400 for prepayment of two years' rent and an additional check for $4,500 for what Ghafir called mortgage payments. Gandy testified that this left her with approximately $20,000 from the transaction.

Gandy testified that Wilson was not her attorney but was assigned to work on the transaction by Price. Gandy identified the warranty deed and lease agreement executed by her

and Ghafir. Gandy testified that she did not understand the transaction to be the actual sale of the Laflin property. She stated that she executed the documents because she believed she was entering a financing arrangement and did not know any better. Gandy added that she trusted Price because he was recommended by her friend Riggins.

Gandy testified that on June 7, 2005, Ghafir tendered her a five-day notice. Gandy testified that she was working at a realty office at that time and took the notice to a Housing and Urban Development counselor at the office, who advised her not to make any more payments because she had already given Ghafir money. Gandy testified that she was not advised of the sale of the Laflin property to Kimbrough, but received a $4,500 check from the title company and took it to her office. She was informed that it might mean that the property had been sold. Gandy's attorney told her she could cash the check with recourse. In September 2005 Kimbrough knocked on her door and informed Gandy that she was the new owner of the Laflin property and required rent payment.

Gandy admitted that her check for the alleged rent prepayment did not contain any indication or notation that was the purpose of the funds. She also admitted that there was no other documentation prepared to support that contention. She testified that the leaseback and repurchase option concepts were discussed and it was proposed that Price would draw up papers for those, but no document was executed at closing for those purposes. Gandy testified that she trusted Price and Mitchell because her friend recommended them.

2. Ghafir Deposition

Ghafir testified that he was a clinical supervisor for the South Suburban Council for

Alcoholism and Substance Abuse but that he was doing consulting work on employee policies for American Home Loans at the time he purchased the Laflin property. Ghafir was informed that the Laflin property was for sale through Price from a woman who worked for Price and was having financial problems. Ghafir understood the transaction would be a straight sale of the Laflin property and decided to take action since he had been looking for investment properties.

Ghafir testified that he completed a loan application and was approved for $90,000 and he, with approximately $5,000 down, purchased the property. Ghafir attended the closing and had no idea what Gandy's understanding of the transaction was. He testified that Price took care of the details. When shown a copy of the lease, Ghafir stated that he did not recognize it and claimed that he did not sign his name on the lease. He stated that there was no discussion of lease arrangements or Gandy staying at the Laflin property until after the closing. However, he stated his understanding of the situation was that Gandy would provide some mortgage payments up front and be responsible for paying the mortgage directly for a year, at which point they would revisit the possibility of her repurchasing.

Ghafir testified that he trusted Gandy to make the mortgage payments directly, but when he was notified in June 2005 that she was delinquent on payments, he visited her. Gandy informed him that she was having health issues but would get money to make the payments. After a month without payment being made, Ghafir made arrangements to pay the past-due mortgage. While Gandy was to pay the mortgage and not rent, Ghafir issued the five-day notice because he did not know what else to do. He decided to sell the Laflin property and, through word of mouth, he identified Kimbrough as a prospective buyer. Ghafir attended the closing

with Kimbrough and stated that she was aware that Gandy continued to reside at the Laflin property.

Ghafir was unable to recall receiving the $18,400 check from Gandy. He also could not explain why $15,599.78 of the proceeds from the sale to Kimbrough were to be directed to Price. Furthermore, he had not seen a document allegedly from him directing $24,761.38 to Riggins Development and did not know what that entity was or why it was disbursed so much funds.

### 3. Kimbrough Deposition

Kimbrough testified that she had invested in several properties resulting in both profits and foreclosures. She testified that she was told that the Laflin property was in preforeclosure and had been rehabbed, showing her pictures of a new kitchen and bathroom. Kimbrough testified that in investigating the property, she researched the Cook County recorder of deeds' Web site to make sure that Ghafir owned the Laflin property and drove past it to assess the exterior condition of the property.

Despite the fact that she maintained that she was going to live at the Laflin property and she was told there was a tenant, Kimbrough did not see the inside of the building or investigate if it was occupied. Kimbrough testified that at the closing, Ghafir was supposed to give her the lease, but she did not receive a copy at that time. Ghafir also told her that he had told Gandy that someone had purchased the property and she would have to move out.

### 4. Documentary Evidence

Numerous documents were attached to Gandy's motion for summary judgment detailing the transactions in this matter. Among the documents included from the first transaction between

Gandy and Ghafir were copies of the canceled checks from Gandy to Ghafir for $18,400 and $6,500, the lease between Ghafir and Gandy, and the HUD-1 settlement statement.

The HUD-1 settlement statement indicates that the gross contract sales price for the Laflin property was $90,000 with $3,000 cash earnest money. The principal amount of Ghafir's loan was $76,500. Ghafir received an $1,100 credit for rent and $5,400 credit for closing costs. Gandy received a carryback second mortgage for $4,500. A copy of the warranty deed with Gandy conveying the Laflin property to Ghafir is also of record.

The HUD-1 settlement statement for the closing between Kimbrough and Ghafir incidates a $170,000 gross contract price. The statement indicates that Kimbrough had a first mortgage for $136,000 and a second mortgage for $33,422. Gandy received $4,500 paying off her second mortgage on the Laflin property, and Saxon Mortgage received $77,399.34 for Ghafir's mortgage. Ghafir was to receive $81,400.21. The HUD-1 also corraborated the handwritten disbursement authorizations attached to Gandy's motion from Ghafir to: Riggins Development for $24,761.38; Donald Price for $15,593.78; and himself for $28,212.65.

C. The Trial Court's Dispositive Order on the Motions for Summary Judgment

Both Kimbrough and Gandy filed motions for summary judgment. There are no transcripts from the proceedings before the trial court, but a January 11, 2010, dispositive order was entered granting Gandy's motion and denying Kimbrough's motion. Ghafir passed away during the course of proceedings and his death was made of record in the order. The trial court found that the deed entered into between Ghafir and Gandy was null and void as a deed, but effective as an equitable mortgage for $48,600. Therefore, the subsequent deed between Ghafir

and Kimbrough was also null and void and defendant was awarded judgment against Ghafir for $71,590, the net amount of her purchase and her mortgage to Chase was found null and void. Kimbrough remains indebted to Chase pursuant to the promissory note utilized as collateral for the mortgage to Chase. This appeal followed.

## II. ANALYSIS

Kimbrough asserts that the trial court erred in granting Gandy's motion for summary judgment because she was a *bona fide* purchaser of the property from Ghafir. However, we find that Kimbrough waived this argument based on her failure to provide pertinent authority and a cohesive legal argument. Kimbrough's second contention is that the trial court erred in granting summary judgment to Gandy, finding that the conveyance from Gandy to Ghafir was not a deed but an equitable mortgage.

Summary judgment may be granted when the pleadings, depositions, admissions and affidavits on file demonstrate no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2006). Where parties file cross-motions for summary judgment, they concede the absence of a genuine issue of material fact and invite the resolution of the matter by the court as a matter of law. *Chicago Hospital Risk Pooling Program v. Illinois State Medical Inter-Insurance Exchange*, 397 Ill. App. 3d 512, 523 (2010) (hereinafter *CHRPP*). We review an order granting summary judgment *de novo*. *CHRPP*, 397 Ill. App. 3d at 523. While we also review the evidence in a light most favorable to the nonmovant, we cannot ignore evidence unfavorable to the nonmovant and may sustain the trial court on any basis called for in the record. *Ruane v. Amore*, 287 Ill. App. 3d 465, 474

11

No. 1-10-0424

(1997).

A. *Bona Fide* Purchaser

As noted above, Kimbrough has failed to provide adequate citation to the record or analysis of case law to provide any cogent argument with respect to her claim that she was a *bona fide* purchaser. " '[A] reviewing court is entitled to have the issues on appeal clearly defined with pertinent authority cited and a cohesive legal argument presented. The appellate court is not a depository in which the appellant may dump the burden of argument and research.' " *In re Marriage of Auriemma*, 271 Ill. App. 3d 68, 72 (1995), quoting *Thrall Manufacturing Co. v. Lindquist*, 145 Ill. App. 3d 712, 719 (1986). Supreme Court Rule 341(h)(7) requires a clear statement of contentions with supporting citation of authorities and pages of the record relied on. 210 Ill. 2d R. 341(h)(7). Ill-defined and insufficiently presented issues that do not satisfy the rule are considered waived. *Express Valet, Inc. v. City of Chicago*, 373 Ill. App. 3d 838, 855 (2007). We will not sift through the record or complete legal research to find support for this issue.

Kimbrough simply presented the proposition that a *bona fide* purchaser of a property interest takes that interest free and clear absent actual or constructive notice of a claim of ownership. *Daniels v. Anderson*, 252 Ill. App. 3d 289 (1993). Kimbrough then cites to *In re Application of County Treasurer*, 30 Ill. App. 3d 235 (1975), as an example where a court found constructive notice because the purchaser lived across the street and the property was improved with aircraft tie-downs and taxiways and was adjacent to the airport. Kimbrough does not provide any analysis of these cases or a cohesive legal argument how they may be applied to the

12

instant facts to support her claim. Rather, she makes a brief conclusory argument that she conducted a diligent inquiry and was a *bona fide* purchaser. This is insufficient and constitutes waiver of this argument.

### B. Equitable Mortgage

Kimbrough also argues that the trial court erred in determining that an equitable mortgage existed between Ghafir and Gandy. The Illinois Mortgage Foreclosure law provides the following definition for "mortgage":

" 'Mortgage' means any consensual lien created by a written instrument which grants or retains an interest in real estate to secure a debt or other obligation. The term 'mortgage' includes, without limitation:

(a) mortgages securing 'reverse mortgage' loans as authorized by subsection (a) of Section 5 of the Illinois Banking Act;

(b) mortgages securing 'revolving credit' loans as authorized by subsection (c) of Section 5 of the Illinois Banking Act, Section 1-6b of the Illinois Savings and Loan Act and Section 46 of the Illinois Credit Union Act;

(c) every deed conveying real estate, although an absolute conveyance in its terms, which shall have been intended only as a security in the nature of a mortgage;

(d) equitable mortgages; and

(e) instruments which would have been deemed instruments in the nature

of a mortgage prior to the effective date of this amendatory Act of 1987." 735
ILCS 5/15-1207 (West 2006).

Under section 5 of the Mortgage Act, a "constructive mortgage" is defined as "[e]very
deed conveying real estate, which shall appear to have been intended only as a security in the
nature of a mortgage, though it be an absolute conveyance in terms, shall be considered as a
mortgage." 765 ILCS 905/5 (West 2006). In determining whether a constructive, or equitable
mortgage exists our courts consider several factors, including:

> " ' the existence of an indebtedness, the close relationship of the parties,
> prior unsuccessful attempts for loans, the circumstances surrounding the
> transaction, the disparity of the situations of the parties, the lack of legal
> assistance, the unusual type of sale, the inadequacy of consideration, the way the
> consideration was paid, the retention of written evidence of the debt, the belief
> that the debt remains unpaid, an agreement to repurchase, and the continued
> exercise of ownership privileges and responsibilities by the seller [Citations.]' "
> *Robinson v. Builders Supply & Lumber Co.*, 223 Ill. App. 3d 1007, 1014 (1991),
> quoting *McGill v. Biggs*, 105 Ill. App. 3d 706, 708 (1982).

The parties' intentions are the key consideration and proof of these factors "must be clear,
satisfactory and convincing" if they are to overcome a written instrument. *Robinson v. Builders
Supply & Lumber Co.*, 223 Ill. App. 3d at 1014. However, "it is not necessary that there be no
conflict in the evidence presented." *Silas v. Robinson*, 131 Ill. App. 3d 1058, 1062 (1985).

Kimbrough argues that the undisputed evidence was insufficient to support a finding that

an equitable mortgage and not an absolute conveyance was created. Kimbrough notes that the aforementioned factors require a fact-intensive analysis and the trial court lacked undisputed facts to support its finding. As in *Robinson*, Kimbrough argues that remand is required because the facts allow for more than one conclusion. *Robinson*, 223 Ill. App. 3d at 1018. Based on our examination of the testimony and documents presented in this case, the trial court properly determined that the transaction between Gandy and Ghafir constituted an equitable mortgage.

In this case, the relationship of the parties, Gandy and Ghafir, is limited to this transaction and were only brought together by Price. Gandy admits that the attorney at the closing, Gregory Wilson, nominally represented her. However, as she points out, more telling is that Wilson was engaged by American Home Loans and Ghafir was not represented by counsel. Further, Gandy filed a legal malpractice suit against Wilson for his failure to adequately provide advice regarding the transaction. It appears that Gandy's classification that the parties were "pawns in a [*sic*] American Home Loans' scheme to generate fees and charges" is not without merit.

In any event, there is no dispute that a debt existed. After the transaction, Gandy's obligation continued as she was required to pay what was classified as rent by Gandy and mortgage payments by Ghafir. It is unclear whether the obligation was to continue or require that Gandy exercise her alleged option to repurchase. Gandy claims that this was the entire premise of the transaction and that she followed Price and Mitchell's lead in executing the transaction because she trusted them, needed the money and did not possess the requisite credit to obtain funds. According to Kimbrough's testimony, Riggins informed her that the kitchen and bathroom of the Laflin property had been renovated, which was the main reason for Gandy's

pursuit of refinancing. Gandy continued to reside in the Laflin property and continues to do so to this date.

While the circumstances surrounding this transaction are certainly unusual to this court, we fear these types of transactions were profligate in recent years. Adding to our concern is that the sophistication of the parties was admittedly limited in this case. Both Gandy and Ghafir testified to almost a complete lack of understanding of the transaction and research of the property's value. This factor, along with the disparity of consideration provided by Ghafir to Gandy opposed to that paid by Kimbrough, clearly points to this being an equitable mortgage and not an outright conveyance.

Ghafir paid a purchase price of $90,000 on July 24, 2004, with a net payout to Gandy of roughly $71,000, who then sent back $22,900 to Ghafir. Ghafir then turned and sold the property to Kimbrough on August 22, 2005, for a contract price of $170,000. This vast disparity, especially factoring in the funds transferred to Ghafir by Gandy, strongly supports our finding that the transaction established an equitable mortgage.

Finally, the most convincing evidence is the testimony by both parties. Gandy clearly believed that this was not a full conveyance of the Laflin property, but a financing arrangement that would allow her to receive funds and then repurchase it when she was in a better position. While Ghafir did testify that he contemplated having a relative live at the Laflin property, he also testified that after a year of payments, Gandy would have the opportunity to repurchase the Laflin property. Based on the totality of the factors, the trial court did not err in finding that an equitable mortgage exists and granting summary judgment to Gandy.

16

### III. CONCLUSION

Accordingly, for the aforementioned reasons, the decision of the trial court is affirmed.

Affirmed.

QUINN and NEVILLE, JJ., concur.

No. 1-10-0424

| Please Use Following Form: | REPORTER OF DECISIONS – ILLINOIS APPELLATE COURT (Front Sheet to be Attached to Each Case) |

Complete TITLE of Case

MARILYN GANDY,

Plaintiff-Appellee,

v.

SHAMEKIA KIMBROUGH,

Defendant-Appellant.

Docket No.

COURT

Opinion Filed

Nos. 1-10-0424
Appellate Court of Illinois
First District, THIRD Division

December 22, 2010
(modified upon rehearing)
(Give month, day and year)

JUSTICES

JUSTICE MURPHY delivered the opinion of the court:

Quinn, P.J., and Neville, J.,

concur[s]

APPEAL from the Circuit Ct. of Cook County, Criminal Div.

Lower Court and Trial Judge(s) in form indicated in the margin:

The Honorable Daniel Riley , Judge Presiding.

For APPELLANTS, John Doe, of Chicago.

Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel. Indicate the word NONE if not represented.

Attorneys for **Defendant-Appellant:** George J. Arnold, George L. Schoenbeck
Sosin & Arnold, Ltd.
11800 W. 75th Ave., Suite 300
Palos Heights, IL 60463
Phone: (708) 448-8141

Attorneys for **Plaintifft-Appellee**: Gilbert Liss
39 S. La Salle Street, #605
Chicago, IL 60603
Phone: (312) 641-6656

For APPELLEES, Smith and Smith of Chicago, Joseph

18