2020 IL App (1st) 192385
No. 1-19-2385
Opinion filed November 2, 2020

First Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| MARY DOHERTY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | Appeal from the |
| | ) | Circuit Court of |
| v. | ) | Cook County. |
| | ) | |
| COUNTRY FAIRE CONVERSION, LLC, an Illinois | ) | |
| Limited Liability Company; GRAYSLAKE | ) | No. 16 CH 2805 |
| INVESTMENTS, LLC, an Illinois Limited Liability | ) | |
| Company; JOHN FARANO; PATRICK DOHERTY; | ) | |
| JOHN R. KELLY; JOHN MCGLYNN REVOCABLE | ) | Honorable |
| TRUST, Dated June 23, 2005, an Illinois Trust; | ) | Caroline Kate Moreland, |
| STANLEY A. SMAGALA; STANLEY A. SMAGALA | ) | Judge, presiding. |
| REVOCABLE TRUST, Dated June 2, 2005, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

_____

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Pierce and Coghlan concurred in the judgment and opinion.

**OPINION**

¶ 1      At a UCC sale, plaintiff Mary Doherty purchased the interest of Grayslake Investments

LLC (Grayslake) in Country Faire Conversion LLC (CFC), a real estate development company,

from The Private Bank and Trust Company, after the bank foreclosed on Grayslake's loan. CFC

then sold its sole asset for a profit of more than $4 million. The manager of CFC, Stanley Smagala

in his capacity as trustee of the Stanley A. Smagala Revocable Trust (Smagala), questioned the validity of the UCC sale and refused to distribute Doherty's share of the proceeds. Doherty filed a complaint, seeking (i) a declaration that she was a member of CFC, (ii) a right to inspect CFC's books, (iii) a 25% distribution because Grayslake had made a 25% capital contribution to CFC, (iv) an accounting, and (v) a claim of breach of Smagala's fiduciary duty to her as a CFC member.

¶ 2    The trial court entered summary judgment, concluding that Doherty owned an economic interest in CFC's profits and losses and not a membership interest because Private Bank had not followed the necessary procedures to become a member of CFC and Doherty had purchased the bank's interest. The trial court entered a separate summary judgment, finding that, as Doherty was not a member of CFC, she did not have a right to inspect CFC's books and lacked standing to seek an accounting or to raise the breach of fiduciary duty claim. After a bench trial, the court held that (i) under CFC's amended operating agreement, Doherty, as holder of an economic interest, was entitled to a 13.75% interest in the proceeds of the sale or $600,477.42, after deducting CFC's attorney's fees and costs and (ii) Doherty was responsible for her own attorney's fees.

¶ 3    Doherty contends (i) Smagala is liable to her, as an economic interest holder, for a breach of fiduciary duty and duties of loyalty and care and good faith and fair dealing, for an accounting, and for inspection of the books and records, (ii) the trial court erred in determining her distributional interest, and (iii) the trial court erred in denying her attorney's fees and costs and deducting Smagala's attorney's fees and costs before calculating her distribution.

¶ 4    We affirm. Doherty was not a member of CFC and lacked standing to (i) bring claims for breach of fiduciary duty or breach of good faith and fair dealing against Smagala, (ii) obtain an accounting, and (iii) challenge CFC's indemnification of Smagala for attorney's fees and costs.

Further, the trial court's finding that Doherty was entitled to a 13.75% interest in the proceeds of the sale was not against the manifest weight of the evidence and the court did not abuse its discretion in denying Doherty's request for attorney's fees and costs.

¶ 5                                            Background

¶ 6       CFC is an Illinois limited liability corporation created to manage, convert, and sell an apartment complex in Grayslake. The original members of CFC were the Stanley A. Smagala Revocable Trust dated June 2, 2005 (Smagala Trust), the John McGlynn Revocable Trust dated June 23, 2005 (McGlynn Trust), Grayslake Investments, LLC, and John R. Kelly. The original members of CFC executed an operating agreement (original operating agreement), which provided that each member's ownership interest depended on their capital contributions, with Smagala Trust contributing $3,465,000 and owning a 45% interest, the McGlynn Trust and Grayslake each contributing $1,925,000 and owning a 25% interest, and Kelly contributing $385,000 and owning a 5% interest.

¶ 7       Smagala, in his capacity as trustee of the Smagala Trust, was the manager of CFC. Article V of the amended operating agreement defined the rights and duties of the manager. Of relevance here, under section 5.01, Smagala, as manager, had full authority to "direct, manage, and control the business of [CFC]" and, under section 5.03(h), had the authority to "employ accountants, legal counsel, managing agents or other experts to perform services for [CFC]." Section 5.07 provided the company "shall, to the maximum extent permitted under Section 15-10 of the [Limited Liability Company] Act [(805 ILCS 180/10-10 (West 2018))], indemnify and make advances for expenses to Manager, its employees, officers, directors, shareholders and other agents."

¶ 8                                    Amended Operating Agreement

¶ 9      At the end of 2006, the members signed an Amended Operating Agreement of Country Faire Conversion, LLC ("amended operating agreement"), retroactive to July 6, 2005. The amended operating agreement changed the members' interest from a capital contribution interest to an "economic interest" in the company's profits and losses as follows: the Smagala Trust-69.75%; the McGlynn Trust-13.75%; Grayslake-13.75%; and Kelly-2.75%. The amended operating agreement defined an "economic interest" as "a Member's or Economic Interest Owner's share of one or more of the Company's Profits, Losses and distributions of the Company's assets pursuant to this Operating Agreement and the Act, but shall not include any right to participate in the management or affairs of the Company, including the right to vote on, consent to or otherwise participate in any decision of the Members or Manager."

¶ 10     Section 6.05 of the original and amended operating agreements provided that "[u]pon reasonable written request, each Member shall have the right, at a time during ordinary business hours, as reasonably determined by the Manager, to inspect and copy, at the requesting Member's expense, the Company documents. *** For the avoidance of doubt, Economic Interest Holders shall not have the right to inspect or copy company records."

¶ 11     As to transferring membership in CFC, section 10.03(a) of the original and amended operating agreements stated, "Notwithstanding anything contained herein to the contrary if all of the remaining Members do not approve by unanimous written consent of the proposed sale *** of the Transferring Member's Membership Interest or Economic Interest to a transferee *** which is not a Member immediately prior to the sale ***, then the proposed transferee *** shall have no

right to participate in the management of the business and affairs of the Company or to become a Member. The transferee *** shall be merely an Economic interest-Owner."

¶ 12 Regarding distributions, section 9.03 of the original and amended operating agreements, stated that "[d]istributable cash shall be distributed to the Members on the record date of such distribution as follows: (a) First, to all Members (including the Manager) and Economic Interest Owners, *pro rata*, in proportion to their Percentage Interests until each Member and Economic Interest Owner receives cumulative distributions pursuant to this Section 9.03(a) equal to its cumulative Capital Contribution; and (b) Second, to all Members (including the Manager), and Economic Interest Owners, *pro rata*, in proportion to their Percentage Interests."

¶ 13                                     Grayslake's Loan

¶ 14 To fund its $1,925,000 capital contribution, Grayslake borrowed $1,500,000 from Founders Bank. Along with other loan documents, the members of Grayslake signed a security agreement and consent to assignment ("security agreement") with Founders Bank. The security agreement stated that if "an event of default shall occur or be continuing under this Agreement or any of the Related Documents, the Company and Member consent, upon written notice from the Lender and pursuant to Section 30-10(a) of the Illinois Limited Liability Company Act ('LLC Act'), 805 ILCS 180/30-10(a), to the Lender becoming a member of the Company to the extent of the Member's Membership Interest to which the security interest granted herein relates."

It further stated, "[CFC] by and through Its Manager, as authorized in Article X of the Company's Operating Agreement does hereby consent to the Assignment of Member's Membership Interest in the Company." The security agreement includes the signatures of John Farano and Patrick Doherty of Grayslake and Smagala, as trustee of the Smagala Trust.

¶ 15    Founders Bank filed a UCC-1 to secure its interest in CFC. In July 2009, the Illinois Department of Financial and Professional Regulation of Banking closed Founders Bank, and the Federal Deposit Insurance Company was named receiver. Some assets, including Grayslake's loan and security interest, were sold to Private Bank.

¶ 16    Private Bank renewed its UCC-1, and the note matured on January 1, 2010. Grayslake was unable to refinance or repay the balance of the note, and Private Bank began foreclosure proceedings. After obtaining a judgment of foreclosure, Private Bank sold Grayslake's interest in CFC to Mary Doherty at a UCC auction for $20,000. (Mary Doherty is the wife of Patrick J. Doherty, an owner of Grayslake.) Patrick Doherty, acting as Mary's attorney, sent a letter to Smagala, stating that as a member of CFC and under the operating agreement, Mary Doherty requested copies of CFC's financial records. Smagala denied the request, stating that Mary Doherty was not a member of CFC but merely an economic interest owner who did not have rights under the operating agreement to inspect the company's books and records. (In the email, Smagala suggested the sale to Mary might be invalid because Patrick Doherty had forged Smagala's name on the security agreement.)

¶ 17    On January 19, 2016, CFC sold its sole asset for $27 million, with CFC receiving $4,717,268.69. After consulting with CFC's accountants, Smagala disbursed the proceeds of the sale to CFC's members but made no distribution to Doherty, believing she did not own a valid interest. According to Smagala, he left the amount he "reasonably believed" was due to Grayslake or Doherty (an amount less than 25%) in CFC's bank account.

¶ 18                                      Doherty Lawsuit

¶ 19     Doherty filed a complaint, which she later amended (second amended complaint), alleging six causes of action: (i) declaratory judgment that she owns a membership interest in CFC; (ii) declaratory judgment that she owns a 25% interest in CFC; (iii) constructive trust; (iv) declaratory judgment that she can inspect CFC's accounts, books, and records; (v) breach of fiduciary duty against Smagala; and (vi) an action for accounting.

¶ 20     CFC filed an answer and affirmative defenses, alleging, in part, that Doherty or her husband, Patrick Doherty, forged Smagala's signature on the security agreement and consent to assignment for Founders Bank, which entitled them to a judgment in their favor. Defendants also filed a counterclaim for a declaratory judgment, seeking a declaration that (i) Smagala's signature on the security agreement was void due to forgery (count I), (ii) Doherty has no membership or economic interest in CFC (count II), and (iii) in the alternative, Doherty owns a 13.75% membership or economic interest in CFC rather than a 25% interest (count III).

¶ 21     Doherty filed a partial motion for summary judgment, asking the trial court to enter summary judgment on count I (*i.e.*, a declaration that she owned a membership interest in CFC). After a hearing, Judge Thomas Allen entered a written order that Doherty held a 25% economic interest in CFC and all other claims to a membership interest were void. During his oral ruling, Judge Allen stated that Doherty was not a member of CFC because, for a lender to become a member, the amended operating agreement and the LLC Act require unanimous consent of CFC's members and Private Bank did not seek unanimous consent. Thus, Doherty's purchase of the bank's interest did not render her a member. Judge Allen also stated (i) the original and amended operating agreements differentiated between percentage of profits and losses and membership

interests, (ii) Doherty did not have a membership interest, but did hold a 13.75% interest in the profits and losses of CFC, and (iii) CFC waived its contention regarding the forgery of Smagala's signature on the security agreement. (The forgery issue is not before us.)

¶ 22    Discovery continued, and Doherty requested financial documents relating to CFC dating back to its inception. Doherty filed a motion to compel discovery, claiming defendants were improperly withholding documents. CFC moved for a protective order under Illinois Supreme Court Rule 201(c)(1) (eff. July 1, 2014), asking the trial court to find Doherty, as an economic interest holder, excluded from access to CFC's financial records. After a hearing on both motions, Judge Allen granted Doherty's motion to compel "as to all documents not previously disclosed by accountants." As to the motion for a protective order, Judge Allen stated that Doherty already had most of CFC's financial records and he would not limit their use during depositions.

¶ 23    Before the trial, Judge Allen retired, and the case was assigned to Judge Caroline Moreland. CFC then moved for summary judgment as to counts III though VI of the second amended complaint. CFC argued that because Doherty had only an economic interest and was not a member of CFC, she could not inspect CFC's records or obtain an accounting and Smagala did not owe her any fiduciary duties under either the amended operating agreement or the LLC Act. Specifically, CFC contended that section 15-20(a)(1-3) of the LLC Act permits members to bring causes of action under an operating agreement and Doherty was not a member, but rather an economic interest holder, who lacked standing to bring any of the causes of action alleged in Counts III, IV, V, and VI of the second amended complaint.

¶ 24    The trial court entered summary judgment as to counts IV, V, and VI. (Doherty withdrew count III seeking a constructive trust.) Judge Moreland stated "because [Doherty is] an economic

interest holder, she does not have any rights to any claims related to the operating agreement for her interest in the company or any rights under the [LLC] Act, because she is not a member. The statute *** is very clear and unambiguous about this, and so I have to follow the statute as it is written. *** I find that she basically does not have standing because she does not have these rights as an economic interest holder."

¶ 25    Judge Moreland further stated that, even if Doherty had standing under the LLC Act and the amended operating agreement, as an economic interest holder, Doherty had no right to inspect CFC's books and records, was owed no fiduciary duties, and had no access to an accounting. The case then proceeded to a bench trial on the amount CFC owed Doherty.

¶ 26    At trial, Smagala testified about the amendment to the operating agreement. Under the original operating agreement, his company, Capital Acquisitions and Development, was to receive a developer's fee of 45% of the profits each year before making a distribution to the other members. Two members of CFC, John Farano and John McGlynn, complained that this arrangement was unfair, so at the end of 2006, Farano drafted an amended operating agreement making each member the owner of an economic interest in CFC's profits and losses. Smagala's interest increased from 45% to 69.75% to account for the elimination of the developer's fees, McGlynn's and Grayslake's interest changed to 13.75%, and Kelly's interest to 2.75%. All of the members agreed and initialed the amendment.

¶ 27    After the sale, Smagala made distributions to the members of CFC under the terms of the amended operating agreement. And he deposited money into CFC's bank account until the court determined who owned Grayslake's interest and the amount.

¶ 28    Doherty's expert witness, Phil Wisneski, testified that Smagala improperly handled the distributions. After CFC sold its asset, Grayslake's 25% capital contribution should have been restored and Doherty, who purchased Grayslake's interest, should have received 25% of the $7,700.000 rather than 13.75%. Wisneski opined that if Doherty had been treated as a member and given a 25% capital contribution interest, she would receive between $1.2 million and $1.4 million.

¶ 29    Defendants' expert witness, Michael Cohen, testified that although the original operating agreement set out each member's interest based on capital contributions, the amended operating agreement replaced the original operating agreement in its entirety and changed the members' interests into shares of the company profits and losses.

¶ 30    Cohen explained that under Section 9.03(a), identical in both the original and amended operating agreements, when distributions are made, every dollar goes out in a higher percentage to Smagala first, then the other members. Because Smagala is paid at a greater percentage—69.75%—he gets his capital returned first. Cohen opined that Doherty was due $634,904 (or 13.75%) in distributions based on his review of the amended operating agreement. He said he did not take into consideration the 25% interest referenced in Judge Allen's October 15, 2018 order because that percentage does not appear in the amended operating agreement, which controlled distributions.

¶ 31    After the three-day trial, the trial court asked the parties to submit their closing arguments in writing. In their written closing argument, CFC provided affidavits and itemized breakdowns of the amounts spent on attorney's fees, accountant's fees, and expert fees. Issuing her ruling from the bench, Judge Moreland found that the amended operating agreement was valid and reiterated Judge Allen's finding that Doherty is a 25% economic interest holder but not a member of CFC

and holds a 13.75% distributional interest under the amended operating agreement. Judge Moreland stated she gave "very little weight" to the testimony of Doherty's expert witness, Wisneski, because he used a 25% rate to determine Doherty's distribution, which "is in direct contradiction to the court order" and because he testified on cross-examination that he and Doherty's attorney wrote his report. Relying on defendants' expert, Cohen, the court stated that the 25% economic interest holder status is irrelevant in determining distributions under Section 9.03(a) of the amended operating agreement, "which clearly uses the term percentage interests for that purpose."

¶ 32    As to fees, Judge Moreland found that Smagala's development fee was eliminated under the amended operating agreement in favor of a change in the distribution percentages. Further, she found that under section 5.03(h) of the amended operating agreement, Smagala, as manager of CFC, had the right to employ legal counsel and other experts to perform services for the company and to be indemnified for those costs under section 5.07 of the amended operating agreement. Judge Moreland noted that Doherty objected on the ground that Smagala never filed a counterclaim seeking indemnification for attorney's fees and other costs, but found that as an economic interest holder, Doherty "has no rights to object to attorneys' fees being paid by the LLC to Mr. Smagala as a manager even if it were against the amended operating agreement, which it's not." The court determined "per defendants' closing arguments" that those costs and fees totaled $614,008.44 and deducted that from the distribution amount of $4,981,117 for a total of $4,367,108.56. Based on this calculation, the court found that Doherty's 13.75% interest was $600,477.42.

¶ 33    The court denied Doherty's request for attorney's fees, stating that under the general American Rule, a prevailing party must bear the cost of litigation absent a statutory provision or agreement between the parties allowing a successful litigant to recover attorney's fees.

¶ 34                                  Analysis

¶ 35    As a preliminary matter, we address CFC's contention that Doherty waived her arguments by failing to comply with Supreme Court Rule 341(h)(7) (eff. May 25, 2018).

¶ 36    Rule 341 governs the form and contents of appellate briefs. Ill. S. Ct. R. 341 (eff. May 25, 2018); *Voris v. Voris*, 2011 IL App (1st) 103814, ¶ 8. Parties must comply with Rule 341. *Voris*, 2011 IL App (1st) 103814, ¶ 8. Rule 341(h)(7) provides that a brief shall contain "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018). This court has held that the failure to elaborate on an argument, cite persuasive and relevant authority, or present a well-reasoned argument violates Rule 341(h)(7) and results in forfeiture of that argument. *Gandy v. Kimbrough*, 406 Ill. App. 3d 867, 875 (2010) ("Supreme Court Rule 341(h)(7) requires a clear statement of contentions with supporting citation of authorities ***. Ill-defined and insufficiently presented issues that do not satisfy the rule are considered waived.") A court of review "is entitled to have the issues clearly defined with pertinent authority cited" (*People v. Hood*, 210 Ill. App. 3d 743, 746 (1991)), and " '[t]he appellate court is not a depository in which the appellant may dump the burden of argument and research.' " (Internal quotation marks omitted.) *Gandy*, 406 Ill. App. 3d at 877 (quoting *In re Marriage of Auriemma*, 271 Ill. App. 3d 68, 72 (1995)).

¶ 37    CFC contends Doherty's brief (i) fails to present coherent arguments supported by authority, (ii) improperly cites to the record, (iii) cites to portions of the record that are not evidence, and (iv) neglects to provide any citation to the record. We acknowledge that some citations to the record are incorrect or non-existent, and while sloppy, the brief complies with Rule 341(h) in enough respects that we decline to strike it or find that her arguments are waived. We exercise our discretion to adjudicate the issues properly presented, despite the brief's limitations. See *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 10 (whether to strike brief and dismiss appeal for failure to comply with Rule 341 is within appellate court's discretion).

¶ 38                              Summary Judgment

¶ 39    Summary judgment applies where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). Summary judgment determines whether a genuine issue of material fact exists. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). In so doing, a court construes the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. *Id.* at 43. "A triable issue precluding summary judgment exists where the material facts are disputed, or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts." *Id.* Summary judgment should be granted where the right of the movant is clear and free from doubt. *Id.* We review a trial court's grant of summary judgment *de novo*. *Argonaut Midwest Insurance Co. v. Morales*, 2014 IL App (1st) 130745, ¶ 14.

¶ 40                                    *Breach of Fiduciary Duty*

¶ 41     Doherty contends the trial court erred in granting summary judgment for CFC as to her claims that Smagala breached his fiduciary duty of loyalty and care and good faith and fair dealing under amended section 10-10 of the Limited Liability Company Act (LLC Act) (805 ILCS 180/10-10 (West 2018)) and the amended operating agreement.

¶ 42     A claim for breach of fiduciary duty must allege: "(1) that a fiduciary duty exists; (2) that the fiduciary duty was breached; and (3) that such breach proximately caused the injury of which the party complains." *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 69. A fiduciary relationship "exists as a matter of law between: attorneys and clients; principals and agents; guardians and wards; and members of a partnership or joint venture." *D'Attomo v. Baumbeck*, 2015 IL App (2d) 140865, ¶ 59. "Where a fiduciary or confidential relationship does not exist as a matter of law, 'facts from which a fiduciary relationship arises must be pleaded and proved by clear and convincing evidence.' " *Id.* (quoting *Magna Bank of Madison County v. Jameson*, 237 Ill. App. 3d 614, 618 (1992)).

¶ 43     Judge Moreland found that Doherty lacked standing under the LLC Act and the amended operating agreement to bring a breach of fiduciary duty claim. We agree.

¶ 44     Section 15-20 of the LLC Act permits a member of an LLC to "maintain an action against a limited liability company, a manager, or another member for legal or equitable relief, *** to enforce *** (1) [t]he member's rights under the operating agreement; (2) [t]he member's rights under this Act; and (3) [t]he rights and otherwise protect the interests of the member, including rights and interests arising independently of the member's relationship to the company." 805 ILCS

180/15-20 (West 2018). This provision excludes the transferee of a distributional interest, who is not entitled to become or to exercise rights of a member. 805 ILCS 180/30-5 (West 2018).

¶ 45     In granting summary judgment as to count I, Judge Allen found that Doherty was not a member of CFC. Doherty does not challenge this finding. And indeed, the amended operating agreement states that absent unanimous written consent of all remaining members of the LLC, a transferee or donee of an economic interest "shall have no right to participate in the management of the business and affairs of the Company or to become a Member." Thus, under both the amended operating agreement and the LLC Act, Doherty could not be a member of CFC and lacks standing to bring claims a member could bring under section 15-20 of the LLC Act.

¶ 46     Doherty asserts that Smagala is liable to her for breach of fiduciary duty under section 10-10 of the LLC Act, as amended. But section 10-10 has no application here. Before its 2020 amendment, section 10-10 stated "[a] member or manager is not personally liable for a debt, obligation or liability of the company solely by reason of being or acting as a member or manager." 805 ILCS 180/10-10 (West 2016). After the trial, the legislature amended the LLC Act and it now says, "[n]othing in subsection (a) or subsection (d) limits the personal liability of a member or manager imposed under law other than this Act, including, but not limited to, agency, contract, and tort law. The purpose of this subsection (a-5) is to overrule the interpretation of subsections (a) and (d) set forth in *Dass v. Yale*, 2013 IL App (1st) 122520, and *Carollo v. Irwin*, 2011 IL App (1st) 102765, and clarify that under existing law a member or manager of a limited liability company may be liable under law other than this Act for its own wrongful acts or omissions, even when acting or purporting to act on behalf of a limited liability company." Pub. Act 101-553 (eff. Jan. 1, 2020) (amending 805 ILCS 180/10-10).

¶ 47    What Doherty ignores is that section 10-10 merely addresses the personal liability of the manager of an LLC; it does not give a nonmember of the LLC standing to bring a breach of fiduciary duty claim against a manager. As noted, Doherty was not a member of CFC and lacked standing to bring a breach of fiduciary duty claim or breach of good faith and fair dealing claims against Smagala. Thus, the trial court did not err in granting summary judgment as to count V of the second amended complaint.

¶ 48                                     *Accounting*

¶ 49    Doherty contends error in the denial of an accounting.

¶ 50    First, Doherty argues that granting summary judgment on her accounting claim conflicts with Judge Allen's order granting her discovery request. Not so. Judge Allen allowed Doherty to engage in pretrial discovery, which she did. Then, before trial, Judge Moreland granted summary judgment on Doherty's request for an accounting. She did not address discovery or Judge Allen's previous order. The orders are unrelated and not in conflict.

¶ 51    And we agree that Doherty did not have standing to bring a claim for an accounting under the LLC Act or the amended operating agreement. Section 30-10 of the LLC Act states that "[a] transferee who does not become a member is not entitled to participate in the management or conduct of the limited liability company's business, require access to information concerning the company's transactions, or, except as provided in subsections (c) and (d) of Section 1-40, inspect or copy any of the company's records." 805 ILCS 180/30-10 (West 2018). Further, the amended operating agreement states that "Economic Interest Holders shall not have the right to inspect or copy company records." Thus, Doherty had no right to an accounting. The trial court properly granted summary judgment.

¶ 52                                   *Distribution*

¶ 53    Doherty contends the trial court erred in calculating her distribution under the amended

operating agreement and entering a judgment in her favor for $600,477.42. Specifically, she

contends she is entitled to a 25% interest based on Grayslake's initial capital contribution rather

than a 13.75% profit and loss interest.

¶ 54    The trial judge, as a trier of fact, sits in a superior position to observe witnesses, judge their

credibility, and determine the weight their testimony should receive. *Bazydlo v. Volant*, 164 Ill. 2d

207, 214 (1995). We will reverse the trial court's findings following a bench trial only if they are

against the manifest weight of the evidence. *Reliable Fire Equipment Co. v. Arredondo*, 2011 IL

111871, ¶ 12. "A decision is against the manifest weight of the evidence only when an opposite

conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on

the evidence." *Eychaner v. Gross*, 202 Ill. 2d 228, 252 (2002).

¶ 55    Doherty contends Judge Moreland erred in finding that Judge Allen concluded she had "a

25 percent economic interest and was only entitled to 13.75 percent in profit and loss distribution

based on the amended operating agreement" and in ruling that "Judge Allen's ruling as to the 13.75

percent distributional interest stands." Doherty argues Judge Allen found she owned a 25% interest

and awarding 13.75% distribution violates the law of the case doctrine. She further contends that

this error caused improper disregard of Wisneski's testimony as in "direct contradiction" to Judge

Allen's finding. We disagree.

¶ 56    Although Judge Allen's written order granting Doherty's summary judgment motion stated

that Doherty was a 25% economic interest holder in CFC, he plainly stated in court that Doherty

held a 13.75% interest in the profits and losses of CFC based on the amended operating agreement.

He also stated that the original and amended operating agreements differentiated between percentage of profits and losses and membership interests and, as noted, concluded that Doherty was not a member of CFC. The plain language of the amended operating agreement, which delineates each party's economic interest, supports Judge Allen's finding that Doherty was the successor to Grayslake's 13.75% interest. Smagala testified that all of the members agreed to this amendment, and Doherty does not challenge the validity of the amendment.

¶ 57    In adopting Judge Allen's finding, Judge Moreland did not violate the law of the case doctrine, which bars relitigation of an issue that has already been decided in the same case. *Krautsack v. Anderson*, 223 Ill. 2d 541, 552 (2006). The law of the case doctrine protects settled expectations of the parties, ensures uniformity of decisions, maintains consistency during the course of a single case, effectuates proper administration of justice, and brings litigation to an end. *Petre v. Kucich*, 356 Ill. App. 3d 57, 63 (2005). "The [law of the case] doctrine applies to questions of law and fact and encompasses a court's explicit decisions, as well as those decisions made by necessary implication." (Internal quotation marks omitted.) *Perik v. JPMorgan Chase Bank, N.A.*, 2015 IL App (1st) 132245, ¶ 30. The judgment follows Judge Allen's ruling that Doherty purchased a 13.75% economic interest at the UCC sale, so the law of the case doctrine has no role here.

¶ 58    After hearing evidence from multiple witnesses—including Smagala, several accountants, and each party's expert witnesses—Judge Moreland found defendant's expert, Michael Cohen, who based his opinion on the 13.75% distributional interest, more persuasive than plaintiff's expert, Phil Wisneski, who based his opinion and report on a belief that Doherty owned a 25% distributional interest. As the trier of fact, we defer to the superior position of Judge Moreland to

observe those witnesses, judge their credibility, and determine the weight their testimony should receive. *Bazydlo*, 164 Ill. 2d at 214. Her finding that Cohen's calculations, based on Doherty's 13.75% profit and loss distribution interest, were more persuasive comports with the manifest weight of the evidence.

¶ 59                                           *Attorney's Fees*

¶ 60     Doherty contends the trial court erred in indemnifying Smagala for his attorney's fees and costs in defending the lawsuit and denying her attorney's fees and costs in enforcing her interests in CFC. We review a court's authority to award attorney's fees under the abuse of discretion standard. *Spencer v. Di Cola*, 2014 IL App (1st) 121585, ¶ 35.

¶ 61     Doherty argues Smagala should have filed a counterclaim for contribution and indemnification under section 2-613 of the Code of Civil Procedure (735 ILCS 5/2-613 (West 2018)), to give her proper notice of a claim for indemnification. Further, even if Smagala had filed a counterclaim, Doherty contends he did not present evidence or testimony during trial to support the award. She believes the trial court's only justification for the amount appeared in CFC's written closing argument, which is not evidentiary in nature.

¶ 62     We reject Doherty's challenge.

¶ 63     Doherty owns an economic interest in CFC but, as a non-member, has no right to "participate in the management or conduct of the limited liability company's business." She is entitled only to her share of CFC's distributions. See 805 ILCS 180/30-10(d) (West 2018). Thus, Doherty lacks standing. Further, even if Doherty had standing, the trial court correctly decided that Smagala, as manager, could be reimbursed. As noted, section 5.01 of the amended operating agreement provides that Smagala, as manager, had full authority to "direct, manage, and control

the business of [CFC]" and, under section 5.03(h), had the authority to "employ accountants, legal counsel, managing agents or other experts to perform services for [CFC]." Section 5.07 says the company "shall, to the maximum extent permitted under Section 15-10 of the Act, indemnify and make advances for expenses to Manager, its employees, officers, directors, shareholders and other agents." Thus, Smagala could obtain reimbursement for attorney's fees and costs incurred as manager of CFC.

¶ 64    As for Doherty's contention that the trial court erred in relying on CFC's written closing argument, rather than holding an evidentiary hearing, we will not consider the issue because she failed to raise it in the trial court. Issues identified for the first time on appeal and not previously raised in the trial court, are waived or forfeited. *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996); *Mann v. Thomas Place, L.P.*, 2012 IL App (1st) 110625, ¶ 15.

¶ 65    Doherty also argues the trial court erred in declining her request for attorney's fees and costs. She contends Smagala acted in bad faith and unfairly by refusing to make a distribution to her and forcing her to file a declaratory judgment action. Doherty cites no authority for this contention, and we reject it. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (failure to cite case law or properly develop legal argument results in argument's forfeiture); *Schrager v. Bailey*, 2012 IL App (1st) 111943, ¶ 30.

¶ 66    Next, Doherty asserts she is entitled to attorney's fees and costs under section 2-701(e) of the Code of Civil Procedure: "Unless the parties agree by stipulation as to the allowance thereof, costs in proceedings authorized by this Section shall be allowed in accordance with rules. In the absence of rules the practice in other civil actions shall be followed if applicable, and if not applicable, the costs may be taxed as to the court seems just." 735 ILCS 5/2-701(e) (West 2018).

This provision addresses cost, not attorney's fees, which rarely fall within the ambit of "costs." *In re Marriage of Keller*, 2020 IL App (2d) 524804, ¶ 22. Section 2-701(e) does not support Doherty's claim for fees.

¶ 67    As the trial court noted, generally, under the American rule, a successful litigant may not recover litigation expenses in the absence of a statute or a contractual agreement between the parties. *Goldstein v. DABS Asset Manager, Inc.*, 381 Ill. App. 3d 298, 302 (2008). Doherty cites no statute or contractual agreement with CFC permitting her to recover attorney's fees. The trial court did not abuse its discretion in denying her request.

¶ 68    Affirmed.

---

**No. 1-19-2385**

---

| | |
|---|---|
| **Cite as:** | *Doherty v. Country Faire Conversion, LLC*, 2020 IL App (1st) 192385 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 16-CH-2805; the Hon. Caroline Kate Moreland, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Betty Strama Brown, of Strama Brown Law Firm, P.C., of Palos Hills, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Matthew J. Sheahin, Lance C. Ziebell, and Thomas J. Fox, of Lavelle Law, Ltd., of Schaumburg, for appellees Stanley A. Smagala and Stanley A. Smagala Revocable Trust Dated June 2, 2005.<br><br>No brief filed for other appellees. |

---