2024 IL App (1st) 231916-U

Nos. 1-23-1916 & 1-23-2159 (consolidated)

Order filed November 27, 2024

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| VICTORIA ENTERTAINMENT PROPERTIES, LLC and VICTORIA OPERATING CO., LLC, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | No. 16 CH 10298 |
| PHOENIX STEPS, LLC and BANK OF AMERICA, N.A., | ) ) ) | |
| Defendants | ) ) | Honorable Anna H. Demacopoulos, |
| (Phoenix Steps, LLC, Defendant-Appellant). | ) | Judge, presiding. |

_____

PRESIDING JUSTICE LAMPKIN delivered the judgment of the court.
Justices Martin and D.B. Walker concurred in the judgment.

**ORDER**

¶ 1   *Held*:  Where plaintiffs sued defendant seeking declaratory relief, injunctive relief, and damages for encroaching on plaintiffs' property, the trial court's award in favor of plaintiffs was not against the manifest weight of the evidence.

¶ 2   Following a bench trial, the trial court granted plaintiffs Victoria Entertainment Properties,

LLC (VEP) and Victoria Operating Company, LLC (VOC) declaratory relief, injunctive relief,

damages, attorney fees, and costs, finding that defendant Phoenix Steps LLC (Phoenix) encroached on plaintiffs' property by building and maintaining structures that extended into plaintiffs' property and by repaving plaintiffs' property without consent.

¶ 3     On appeal, defendant argues that the trial court erred by (1) holding that plaintiffs own the airspace over an easement, which is occupied by structures defendant built and/or maintained, (2) finding an intentional trespass, (3) finding an actionable trespass, (4) denying defendant's *laches* defense, and (5) awarding plaintiffs damages and attorney fees.

¶ 4     For the reasons that follow, we affirm the judgment of the circuit court.[1]

¶ 5                                    I. BACKGROUND

¶ 6     This appeal involves the parties' dispute regarding their rights to use a passageway located between their respective properties.

¶ 7     In 2000, plaintiff VEP purchased property located on North Sheffield Avenue in Chicago (the Victoria Property). VEP owns plaintiff VOC, which leases the Victoria Property and operates The Vic Theatre.

¶ 8     In 2012, defendant Phoenix acquired property located on West Belmont Avenue in Chicago, which includes a two-story building (the Phoenix Property). The Phoenix Property is immediately north of the Victoria Property. Numerous structures (the appurtenant items), including a brick shed, HVAC runs, ducts, drains, conduits, gutters, air conditioners, and vents,

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

are located on the south wall of the Phoenix Property and extend over the south line of the Phoenix Property and into the Victoria Property.

¶ 9    A 10-foot passageway, which is on the northernmost 10 feet of the Victoria Property and owned by VEP, runs between the Victoria Property and the Phoenix Property. This passageway is subject to an easement dated October 5, 1911, which provides, in relevant part, that the 10-foot passageway shall be kept open and unobstructed as a passageway for the common use of the owners and grantees (*i.e.*, plaintiffs and defendant) and their tenants and occupants. Furthermore, the owners of either side of the passageway shall have the right to construct fire escapes over the passageway in conformity with the ordinances of the City of Chicago, so long as the fire escapes are constructed to leave ample head room for free passage through the passageway.

¶ 10    According to the parties' stipulations, before defendant acquired the Phoenix Property, defendant ordered and received surveys dated February 14, 2012, and March 2, 2012. After defendant acquired the Phoenix Property, defendant ordered and received a survey dated June 29, 2012. When defendant acquired the Phoenix Property, it had attachments on its south wall that extended beyond the southern property line. Furthermore, defendant's tenants are not permitted to alter the structures of the building on the Phoenix Property, including by attaching any structures to the exterior of the building, without defendant's permission. Defendant has the ability to remove any structures attached to the south wall of its building and direct its tenants to remove any structures they attached to the south wall of its building.

¶ 11 When defendant acquired the Phoenix Property in 2012, defendant assumed a lease with Bank of America[2] for a portion of the Phoenix Property, which lease began in June 2005. Bank of America attached five metal HVAC vents to the south wall of the Phoenix Property, which extend out of the first floor of the Phoenix Property, above the passageway, and vertically to the roof of the Phoenix Property. In July 2019, Bank of America cancelled its lease and surrendered the leased premises to defendant.

¶ 12 In April 2014, Samuel Hergott, defendant's property manager, left a voicemail for VEP's principal, Jerry Mickelson, stating that defendant wanted to repave the passageway to more easily store dumpsters there and needed Mickelson's permission to do so. Although defendant never received permission, it repaved plaintiffs' property anyway. Defendant's unauthorized repaving caused water intrusion into The Vic Theatre.

¶ 13 Plaintiffs objected to defendant's unauthorized repaving and demanded that defendant pay for the repair work performed by plaintiffs. During those discussions, plaintiffs demanded, on June 10, 2015, that defendant remove the encroachments attached to the south wall of its building. On June 15, 2015, a representative of defendant offered to reimburse plaintiffs for the repair work if plaintiffs agreed to amend the passageway easement to accommodate defendant's encroachments. Plaintiffs rejected defendant's proposal, insisted on reimbursement for repair work, and offered defendant a one-year license for its encroachments for $30,000.

---

[2]Although Bank of America was a named defendant in this matter, the trial court in March 2021 granted summary judgment in favor of Bank of America on VEP's claim for ejectment.

¶ 14    Defendant did not pay the proposed license fee and did not reimburse plaintiffs for the repair work. Plaintiffs removed defendant's new asphalt, repaired the property's pitch, repaired broken drain tile and concrete, and performed other tasks for a total of $13,515.

¶ 15    This litigation began in 2016 when VEP filed suit for trespass and nuisance. Thereafter, in the operative complaint, plaintiffs sued defendant for (1) intentional trespass, (2) negligent trespass, (3) private nuisance, (4) a declaratory judgment that defendant's right to use plaintiffs' property is limited to use of the passageway to enter and exit defendant's building, and (5) ejectment. Defendant's answer raised several affirmative defenses, including that VEP did not own the airspace between the buildings, the statute of limitations barred actions for trespass and nuisance, the balance of equities favored defendant, and *laches* and waiver.

¶ 16    The trial court conducted a bifurcated bench trial, which had a liability phase and a remedies/damages phase.

¶ 17    During the liability phase, Mickelson, the sole member and manager of VEP (the entity that owns VOC) testified that he owns The Vic Theatre and several other theatres in Chicago. He has been in the entertainment business nationally and in the Chicago area for more than 50 years. He testified about the potential value of the easement and the likelihood of future development. He explained his reasons for buying the Victoria Property, particularly the idea that the Victoria Property was "covered land play," *i.e.*, a concept that involves a buyer purchasing real estate that can bring in money for the owner while the property appreciates in value and can later be redeveloped. Mickelson testified that he expected to develop the Victoria Property from lot line to lot line by building over the 10-foot passageway required by the easement while still preserving

that passageway. Defendant did not offer any evidence to rebut Mickelson's testimony. Mickelson also testified that defendant's unauthorized repaving of the passageway negatively impacted the Victoria Property by changing the pitch of the gangway so that when it rained, water flowed into the theatre's exit doors and caused flooding and damage. The trial court found that Mickelson was very credible.

¶ 18 Timothy Glascott testified as plaintiffs' expert witness based on his experience of working in real estate brokerage, management, and development. The trial court found that he was credible, instructive on general principles in real estate development, and corroborative of Mickelson's testimony about the potential value of the airspace above the easement exceeding $2.5 million and the likelihood of its future development.

¶ 19 The parties stipulated to the expert testimony of George Halik, a retired architect who was licensed and had practiced in Illinois for 42 years. The parties stipulated that if called as a witness at trial, Halik would have provided his expert testimony that, based on his familiarity with the Victoria Property and his review of the passageway easement, it would be "feasible for the owner of [the Victoria Property] to utilize the northernmost ten feet of the property while accommodating the [passageway easement], including by building a structure that extends to Plaintiffs' northern property line while accommodating [defendant's] right of ingress and egress." Defendant did not offer any evidence to rebut Halik's testimony.

¶ 20 Hergott, the former property manager of the Phoenix Property, testified about the 2012 purchase of the property, the review of documents and plat surveys prior to and after the purchase, and the content of the lease agreements between defendant and its tenants. Specifically, Hergott

testified that defendant knew about the appurtenant items when it purchased the Phoenix Property. Hergott's testimony and plaintiffs' comparison of surveys depicting the south wall of the Phoenix Property in June 2012 and January 2019 established that at least 19 appurtenant items were added since the 2012 survey. Hergott also testified that an additional appurtenant item was installed after May 2020, over three years after VEP initiated this lawsuit.

¶ 21    The parties stipulated to the admission of a voicemail from Hergott to Mickelson, wherein Hergott described the proposed repaving of the passageway and acknowledged that defendant needed Mickelson's permission to proceed. Hergott testified that defendant never received plaintiffs' permission to repave the surface of the passageway, but defendant repaved it anyway. Hergott confirmed that, after plaintiffs' June 10, 2015, letter demanding that defendant remove the appurtenant items attached to defendant's south wall, defendant proposed that it would reimburse plaintiffs for the cost of corrective construction work and repaving if VEP would agree to amend the passageway easement regarding defendant's use of the passageway.

¶ 22    Hergott provided an affidavit during the summary judgment proceedings, which the trial court relied on when it denied VEP's motion for summary judgment. However, during cross-examination at the bench trial, Hergott admitted that his statements in that affidavit were false. He also admitted that statements made in defendant's pleadings were false and answers he gave during his depositions were false. He also admitted that defendant had allowed encroachments to the building after this litigation commenced and after the denial of summary judgment, but then claimed ignorance regarding who actually authorized the encroachments. The trial court found that Hergott was not credible at all.

¶ 23    Kurt Pairitz, the managing director of development at defendant's parent company, testified that during defendant's due diligence regarding purchasing the Phoenix Property, defendant would have recognized that the appurtenant items were all south of the property line. He saw the appurtenant items attached to the Phoenix Property but decided to continue with the purchase of the property anyway. He also testified that defendant's building had two interior stairways, both of which were useable. The parties stipulated that his direct testimony relating to the passageway easement and his understanding of that easement were stricken and excluded from the record. Pairitz claimed ignorance about the encroachments that were added after this litigation began, but the trial court found that he was not credible.

¶ 24    The parties stipulated to the introduction of two reproductions of the Chicago Municipal Code (building code). One version was effective prior to July 1, 2019, and the other version was effective July 1, 2019. The prior version of the building code provided that "[f]ire escapes shall not be permitted except where such exits now serve existing buildings and except as approved by the building commissioner for existing buildings where additional exits are necessary and conditions do not permit the use of more adequate exit facilities." Chicago Municipal Code § 13-160-630 (amended Nov. 13, 2007). The current version of the building code provides that fire escapes "shall not constitute any part of the required means of egress in new *buildings*." (Emphasis in original.) Chicago Municipal Code § 14R-3-307 (eff. July 1, 2019). Furthermore, "[n]ew fire escapes for *existing* buildings may be *approved* by the *building official* only where interior or exterior stairways cannot be utilized because of *property lines* limiting stairway size or because of sidewalks, alleys or roads at grade level." (Emphasis in original.) *Id.*

¶ 25    In its December 2022 judgment concerning liability, the trial court determined that the unambiguous language of the passageway easement granted defendant the limited rights to (1) use the passageway as a "way of passage," and (2) build a conforming fire escape above the passageway. Accordingly, the court entered a declaration that defendant has no right to either build anything other than a conforming fire escape above the passageway or repave the passageway.

¶ 26    Regarding the law governing superadjacent airspace (*i.e.*, airspace that is close to the ground), the court determined that plaintiffs had an ownership interest in its airspace above the passageway because they could practicably use that airspace. In contrast, defendant, under the terms of both the previous and current building codes, could, at best, apply to construct a fire escape but could not use the airspace at issue for a fire escape because defendant's building had interior stairways that could be used. Accordingly, the court determined that defendant has no right to construct a fire escape pursuant to the passageway easement because defendant cannot do so in conformity with City ordinances and, thus, the passageway easement's terms regarding a fire escape did not prevent plaintiffs from making use of the airspace above the passageway. The court concluded that plaintiffs established an ownership interest in the airspace above the passageway because the evidence established that they can make use of the airspace above the passageway while complying with the terms of the passageway easement.

¶ 27    Regarding plaintiffs' trespass claim, the court ruled that defendant intentionally trespassed by, *inter alia*, acquiring the Phoenix Property despite knowing that it included encroachments, repaving plaintiffs' property without consent, and installing at least 19 more encroachments between June 2012 and the September 2022 bench trial, including at least one encroachment

installed more than three years into this case. Regarding ejectment, the court found that plaintiffs owned their property, including the passageway; the encroachments extended into plaintiffs' property; and plaintiffs had a higher or better title to that property than defendant's claim. The court ruled against plaintiffs on their private nuisance claim, and plaintiffs do not appeal that decision. Finally, the court rejected defendant's remaining affirmative defenses, including *laches*, finding that (1) the 20-year statute of limitations for adverse possession had not yet run, and (2) defendant did not prove any special circumstances or conduct needed to bar plaintiffs' claims before that 20-year period had lapsed.

¶ 28    After the remedies phase of the bifurcated bench trial, the trial court issued its remedies judgment in September 2023, which granted plaintiffs declaratory relief, injunctive relief, and damages. The court did not conduct a balancing of the relative hardships because defendant's encroachments were "not slight," and defendant was intentional with the encroachments since defendant purchased the building knowing about the encroachments and intentionally added more encroachments even during the pendency of this case. The court enjoined defendant and any current or future owners or tenants of the Phoenix Property from, *inter alia*, building or maintaining any structures that extend past defendant's southern property line, regardless of whether such structures sat on the ground or hung in the air. The court also ordered defendant to remove all encroachments within 180 days and provide monthly written updates about its progress. If defendant failed to abide by that deadline, then defendant would pay plaintiffs $5,000 every 30 days following the deadline until defendant has complied with its obligations. The court awarded plaintiffs $16,517.55 in damages for defendant's unauthorized repaving work, and

$249,000 as the reasonable rental value for the premises defendant unlawfully occupied with the encroachments, which according to the trial evidence was $30,000 per year for 8.3 years. The trial court awarded plaintiffs the same amount as damages for their intentional trespass and ejectment claims but limited them to a single recovery of those damages.

¶ 29    In October 2023, the trial court issued its judgment regarding fees and costs. The court ruled that an award of attorney fees was appropriate based on (1) defendant's intentional, willful and wanton trespasses, (2) defendant's sanctionable violation of Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018) because defendant made numerous untrue and false statements without reasonable cause, and (3) sanctions pursuant to Illinois Supreme Court Rule 219(b) (eff. July 1, 2002) because defendant improperly denied requests to admit material facts. The court determined that the work and rates of plaintiffs' counsel were reasonable, the expenses plaintiffs incurred for expert work were reasonable, and defendant's objections to the fee petition were insufficient and therefore waived. Accordingly, the court ordered defendant to pay plaintiffs $804,657.49 for attorney fees, and $2,932.46 for costs.

¶ 30    Defendant timely appealed the trial court's orders.

¶ 31                                II. ANALYSIS

¶ 32    "A trial court's judgment following a bench trial will be upheld if there is any evidence supporting it." (Internal quotation marks omitted.) *Southwest Bank of St. Louis v. Poulokefalos*, 401 Ill. App. 3d 884, 890 (2010). While pure questions of law are reviewed *de novo*, the trial court's findings and judgment must be affirmed "unless they are against the manifest weight of the evidence." *Eychaner v. Gross*, 202 Ill. 2d 228, 251-52 (2002). A reviewing court must not

"substitute its judgment for that of the trier of fact" (*id.*), and "[a] factual finding is against the manifest weight of the evidence only when the opposite conclusion is clearly apparent or the findings are unreasonable, arbitrary, or not based on the evidence" (*Jackson v. Callan Publishing, Inc.*, 2021 IL App (1st) 191458, ¶ 185). Deference to the trial court extends to specific aspects of its judgment, including its determination of damages, issuance of an injunction, and award of fees. See *Zuder v. Gibson*, 288 Ill. App. 3d 329, 334 (1997) (damages determination "is within the discretion of" the factfinder, is "entitled to substantial deference," and "will not be disturbed" absent a showing that " 'a proven element of damages was ignored, the verdict resulted from passion or prejudice, or the award bears no reasonable relationship to the loss suffered' " (quoting *Gill v. Foster*, 157 Ill. 2d 304, 315 (1993))); *Dayan v. McDonald's Corp.*, 64 Ill. App. 3d 984, 987 (1978) (trial court "has broad discretion when issuing an injunction and said injunction will not be set aside unless there is a manifest abuse of discretion"); *Father & Sons Home Improvement II, Inc. v. Stuart*, 2016 IL App (1st) 143666, ¶ 58 (whether to impose sanctions "ultimately rests with the sound discretion of the trial court").

¶ 33 We agree with plaintiffs' argument that portions of defendant's brief violate the Illinois Supreme Court rules because (1) defendant failed to present a statement of facts "accurately and fairly without argument or comment, and with appropriate reference to the pages of the record," in violation of Illinois Supreme Court Rule 341(h)(6) (eff. Oct. 1, 2020), (2) defendant failed to file an appendix, including "materials from the record that are the basis of the appeal or pertinent to it," in violation of Illinois Supreme Court Rule 342 (eff. Oct. 1, 2019), and (3) defendant's brief contains conclusory statements and counsel's commentary without any citation to the record or

authority, in violation of Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020). We note, however, that in July 2024 we granted defendant leave to file its supplementary appendix with its reply brief.

¶ 34 "This court expects the parties to present their arguments clearly, with support from citations to authority and the record, so that we can ascertain and properly dispose of the issues involved." *Gwozdz v. Board of Education of Park Ridge-Niles School District No. 64*, 2021 IL App (1st) 200518, ¶ 28. This court would be well within its discretion to strike portions of defendant's brief for its violations of the Illinois Supreme Court rules. See *Epstein v. Davis*, 2017 IL App (1st) 170605, ¶ 22. However, the violations in defendant's brief do not hinder our review. Consequently, we will disregard defendant's conclusory statements, unsupported assertions, and commentary. See *Pasic v. Department of Financial & Professional Regulation*, 2022 IL App (1st) 220076, ¶ 15.

¶ 35 A. Rights to the Airspace Above the Passageway

¶ 36 Defendant argues that plaintiffs failed to prove that they have the right to exclude defendant from using the airspace over the passageway easement because plaintiffs cannot practicably use that airspace since defendant has the right under the passageway easement to build a fire escape in conformance with the building code. Although the building code indicates that defendant could not presently construct a fire escape because interior stairways can be used in defendant's building, defendant argues, without citation to any relevant authority (see *Gandy v. Kimbrough*, 406 Ill. App. 3d 867, 875 (2010) (a party forfeits an argument by failing to provide pertinent authority and a cohesive legal argument); *People v. Hood*, 210 Ill. App. 3d 743, 746 (1991)), that the amendment

of the building code in 2019 does not alter the property rights reserved in the 1911 easement in the deed. Defendant adds that plaintiffs filed this case nearly three years before the relevant amendment to the current building code. Under the building code in effect before July 1, 2019, defendant asserts that it could have applied for and received approval from the building commissioner by showing that additional exits were necessary and conditions do not permit the use of more adequate exit facilities. Defendant also argues that the building code could be amended in the future to be more permissive about fire escapes.

¶ 37    A landowner has exclusive possession of the usable portions of the airspace above his property. *United States v. Causby*, 328 U.S. 256, 264 (1946).

> "[I]t is obvious that if the landowner is to have full enjoyment of the land, he must have exclusive control of the immediate reaches of the enveloping atmosphere. Otherwise buildings could not be erected, trees could not be planted, and even fences could not be run. The principle is recognized when the law gives a remedy in case overhanging structures are erected on adjoining land." *Id.*

As the Supreme Court explained in *Causby*, "[t]he landowner owns at least as much of the space above the ground as he can occupy or use in connection with the land," and it "is not material" if the landowner "does not occupy it in a physical sense." *Id.* Thus, "the landowner, as an incident to his ownership, has a claim to it" and "invasions of it are in the same category as invasions of the surface." *Id.*

¶ 38    Applying that principle, the Illinois Supreme Court ruled in *People ex rel. Hoogasian v. Sears, Roebuck & Co.*, that a landowner had "a legal right to use the air space above its property"

to construct a building "as high as he desires and is able." 52 Ill. 2d 301, 303, 306-07 (1972). Absent such occupation or use, the right to exclusive control of airspace depends significantly on how far the airspace is from the ground. See *Causby*, 328 U.S. at 263-65 (airplane flights as low as 83 feet are actionable); *Hinman v. Pacific Air Transport*, 84 F.2d 755 (9th Cir. 1936) (flights at 150 feet and above are not actionable).

¶ 39    The airspace at issue here is between the buildings owned by plaintiffs and defendant, closer to the ground than either building's highest point, and indisputably "close to the land." Thus, as a matter of law, that "superadjacent" airspace belongs exclusively to plaintiffs, subject only to the terms of the passageway easement. Moreover, we reject defendant's argument that the fire-escape provision in the passageway easement divested plaintiffs of their ownership of the superadjacent airspace. The passageway easement included the right to construct fire escapes "in conformity with the City ordinances." However, the construction of new fire escapes for existing buildings is prohibited unless "interior or exterior stairways cannot be utilized[.]" See Chicago Municipal Code § 14R-3-307.1.3 (eff. July 1, 2019). Pairitz, defendant's in-house architect, testified that defendant's building "has not one but two interior stairways that connect the first and second floors," and "[b]oth of those interior stairways can be utilized." Thus, defendant's right to build a fire escape terminated years ago, because "an easement granted for a particular purpose terminates when such purpose ceases to exist, is abandoned, or is rendered impossible of accomplishment." *Wehde v. Regional Transportation Authority*, 284 Ill. App. 3d 297, 303 (1996). Here, the evidence supports the trial court's finding that, under the terms of the previous and current building codes, defendant could, at best, apply to construct a fire escape but could not use

the airspace at issue for a fire escape because defendant's building had interior stairways that could be used for that purpose.

¶ 40    The trial court determined that plaintiffs did show an ability to occupy its superadjacent airspace through the stipulated and unrebutted testimony of its expert architect, who testified that "[s]ubject to applicable height restrictions, it is feasible for the owner of [the Victoria Property] to utilize the northernmost ten feet of the property while accommodating the [passageway easement], including by building a structure that extends to Plaintiffs' northern property line while accommodating [defendant's] right of ingress and egress." The trial court concluded as a matter of fact that plaintiffs own the superadjacent airspace over the passageway, and that finding is entitled to deference on appeal. *Eychaner*, 202 Ill. 2d at 252.

¶ 41                                B. Intentional Trespass

¶ 42    First, defendant argues that the trial court erred in finding that defendant committed an intentional trespass because many of the appurtenant items in the airspace above the passageway predated defendant's acquisition of the Phoenix Property. Defendant contends that it did not make an intentional and voluntary invasion into plaintiffs' property merely by purchasing the Phoenix Property while knowing that there were encroachments. According to defendant, plaintiffs were required, but failed, to prove the intent of the actual appurtenant installers at the time of the installation. Defendant, however, cites no relevant authority to support this proposition, which results in forfeiture of the argument. See *Gandy*, 406 Ill. App. 3d at 875; *Hood*, 210 Ill. App. 3d at 746.

¶ 43    Second, defendant argues that the trial court erroneously retroactively applied its finding of intentional trespass to the appurtenant items added after defendant acquired the Phoenix property. According to defendant, the trial court's only finding of intent was as of June 10, 2015; there was no finding of intent prior to that date. Defendant also asserts that, except for a kitchen exhaust fan constructed in May 2020, plaintiffs failed to introduce any evidence that any appurtenant item was affixed after June 10, 2015. Defendant believes that the trial court found intent effective on June 10, 2015, and then retroactively applied that finding to all the appurtenant items, including items that pre-dated defendant's acquisition of the Phoenix Property.

¶ 44    Defendant forfeited its challenge to the trial court's factual findings about defendant's intentional conduct by failing to raise the issue before the trial court issued its December 2022 judgment regarding liability. Failure to timely raise an issue before the trial court results in forfeiture. *Stahelin v. Forest Preserve District of DuPage County*, 401 Ill. App. 3d 1030, 1041 (2010). The trial court evaluated intentional trespass during the first-phase liability bench trial. Defendant never argued during those proceedings that there can be no intentional trespass where a defendant acquires a property knowing it is riddled with encroachments. Instead, defendant's arguments regarding intent focused exclusively on whether there was evidence defendant "knew with a high degree of certainty that an intrusion will happen from [its] actions," whether the passageway easement was relevant to defendant's "intentionality," and whether defendant could be held liable for any trespass if (as defendant incorrectly argued) plaintiffs did not "have lawful possession of the airspace where the attachments are located[.]"

¶ 45    It was not until the second-phase remedies bench trial—several months after the December 2022 judgment concerning liability—that defendant first raised its current argument regarding evidence of its intent. The trial court immediately recognized defendant's argument as untimely, stating that the court would not re-decide the intentional trespass issue and had found that plaintiffs met their burden on that issue. Defendant's untimely argument before the trial court cannot be raised on appeal. *Id.*

¶ 46    Forfeiture aside, the trial court concluded based on record evidence that defendant acted intentionally, and that finding is entitled to great deference on appeal. Because intent is a question of fact, the trial court's findings as to intent "are entitled to great deference" on appeal. *Northwest Diversified, Inc. v. Desai*, 353 Ill. App. 3d 378, 387 (2004); *Poulokefalos*, 401 Ill. App. 3d at 891. Here, the evidentiary record is replete with evidence of defendant's intentional conduct. Defendant intentionally (1) acquired its property with full knowledge that it included numerous encroachments on plaintiffs' property, (2) built and maintained at least 19 more encroachments after buying the property, despite knowing the location of the property line, (3) misrepresented for years in this litigation that it had not built any encroachments, despite continuing to install even more encroachments while this case was pending, and (4) repaved plaintiffs' property despite knowing that it needed, but lacked, plaintiffs' consent to do so. The trial court was well within its discretion in finding that defendant acted intentionally in trespassing upon plaintiffs' property.

¶ 47    On appeal, defendant asks this court to ignore the record evidence and rule, contrary to the trial court's factual findings, that defendant could not have acted intentionally with respect to the encroachments until June 2015, when plaintiffs asked defendant to remove them. Asserting that

plaintiffs' request was the trial court's "only finding of intent," defendant argues that the trial court assumed intent based on the mere presence of the encroachments. Defendant's argument is flawed because it mischaracterizes the trial court's ruling.

¶ 48    As the trial court explained in rejecting defendant's belated attempt to raise the intent issue, the court made "specific findings of fact" regarding defendant's intent. For example, the trial court found that "[defendant] purchased [its] Property with the knowledge that certain Appurtenant Items *** extended into the airspace above the Passageway." As the trial court explained, defendant commissioned two surveys that were received prior to defendant's acquisition of the Phoenix Property, and "[b]oth surveys *** state: 'NOTE: SUBJECT BUILDING HAS UTILITY APPURTENANCES AND VENTING EXTENDING OVER THE SOUTH AND EAST PROPERTY LINES.' " Despite that notice and warning, and despite defendant's admissions that it knew about the encroachments and understood that those encroachments extended beyond the property line, defendant "decided to continue with the purchase of the Property anyway." Defendant or the tenants for which it was responsible then "constructed at least 19 additional Appurtenant Items" between June 2012 and the completion of a January 2019 survey. At least one encroachment was installed in 2020, about "four years after this litigation was commenced" and while defendant was falsely representing that no encroachments were installed after defendant purchased its property in 2012.

¶ 49    The evidence supports the trial court's finding that "[defendant] acted to construct and maintain Appurtenant Items with a high degree of certainty that such items would extend into airspace owned by Plaintiffs." Nothing more was required to establish defendant's intent because,

under Illinois law, a trespass is intentional when the trespasser "proceeded despite notice or warning" or did not "take proper precautions to ascertain [a] boundary." *Ariola v. Nigro*, 16 Ill. 2d at 51-52; see *Nitterauer v. Pulley*, 401 Ill. 494, 505 (1948) (ruling encroachment intentional because defendants "added the three or four feet to their building without using any appreciable care to ascertain the boundary line" and holding that "[t]hey must be held to have constructed [the addition] at their peril").

¶ 50     Defendant's 2015 conduct—including its acknowledgement that the passageway easement would need to be amended to accommodate encroachments—confirms defendant knew by then that encroachments were not permitted. But that does not render defendant's prior, deliberate acts unintentional, particularly given the record of intentional conduct presented at trial. Defendant acted with intent in knowingly buying a building including encroachments, knowingly building even more encroachments, and knowingly repaving plaintiffs' property without consent, and the trial court concluded that all of those acts were intentional. The trial court's ruling as to defendant's intentional conduct is well-supported and is affirmed. See *Desai*, 353 Ill. App. 3d at 387; *Poulokefalos*, 401 Ill. App. 3d at 891.

¶ 51                         C. Actionable Trespass

¶ 52     Defendant argues that, even if plaintiffs own the airspace rights above the passageway and the appurtenant items located in that airspace are a trespass, no remedy is warranted because plaintiffs presented no credible evidence that they suffered any legally cognizable damage. Defendant contends that most of the appurtenant items extend into the airspace above plaintiffs' land by less than six inches and thus are *de minimis*. Defendant argues that when the trial court

awarded plaintiffs the injunctive relief of removal of the appurtenant items, the court failed to balance the equities and consider whether an adequate remedy exists at law. Accordingly, defendant asks this court to find that plaintiffs' alleged technical trespass is not actionable and limit plaintiffs' remedy to, at most, nominal damages.

¶ 53    The trial court had authority and discretion to grant injunctive relief after finding in favor of plaintiffs on their trespass claim, both to end defendant's ongoing trespasses and to prevent future trespasses. See *Cameron v. Bartels*, 214 Ill. App. 3d 69, 74-75 (1991) ("an injunction will lie to restrain acts of trespass to real property, which are continuous or constantly recurring, where irreparable injury will result unless they are restrained"). The trial court likewise had authority and discretion to award damages for trespass. *Chicago Title Land Trust Co. v. JS II*, IL App (1st) 063420, ¶ 77; *Citizens National Bank v. Joseph Kesl & Sons Co.*, 378 Ill. 428, 433-45 (1941). Defendant does not dispute either proposition, and we conclude that defendant's arguments lack merit.

¶ 54    First, defendant mischaracterizes the nature and extent of its encroachments as "*de minimis*." Defendant asserts that most of the encroachments extend into the airspace above plaintiffs' land by less than 6 inches, but that assertion is false. The record evidence—defendant's own 2019 survey—shows 18 "Encroachments and Height Above Grade," 16 of which extend more than six inches beyond the property line, and many of which extend more than two to three feet beyond the property line.

¶ 55    Second, defendant asserts that plaintiffs presented no credible evidence of injury or damages from defendant's encroachments. The record, however, refutes this assertion. Plaintiffs

presented unrebutted expert testimony that the value of its airspace exceeds $2.5 million. The trial court expressly noted that it found this expert testimony "credible," and credibility findings are entitled to "great deference" on appeal. *Samour, Inc. v. Board of Election Commissioners of City of Chicago*, 224 Ill. 2d 530, 548 (2007). Furthermore, plaintiffs were threatened with the loss of property rights if defendant's encroachments were permitted to remain.

¶ 56    Third, defendant argues that plaintiffs are limited by law to nominal damages only. To support this argument, defendant relies heavily on *Geller v. Brownstone Condominium Association*, 82 Ill. App. 3d 334 (1980) [hereinafter, *Geller I*], but nothing in that decision addressed superadjacent airspace because, unlike here, the alleged trespass in *Geller I* was far above the ground. *Id.* at 335-36. Specifically, temporary scaffolding had been used to work on the side of a high-rise condominium building and extended into airspace above the property on which a three-story residence was being built. *Id.* The court thus ruled that the alleged "use of temporary scaffolding in the air and space above that residence cannot be deemed actionable." *Id.* Unlike in *Geller I*, the airspace at issue here—*i.e.*, between the buildings owned by the parties—is immediately adjacent to the land. As a matter of law, that "superadjacent airspace" is treated just like the land itself. See *Causby*, 328 U.S. at 265; see also, *JCRE Holdings, LLC v. GLK Land Trust*, 2019 IL App (3d) 180677, ¶¶ 4, 8, 16 (holding, without any discussion regarding the plaintiff's practical use of the space at issue, that a neighbors' permanent structure extending 32 inches into the plaintiff's airspace is an actionable trespass). *Geller I* also never discussed limiting trespass damages to nominal damages. In any event, *Geller I* involved one temporary encroachment far

above the ground, whereas this case involves more than 40 permanent structures extending into plaintiffs' superadjacent airspace. Nothing in *Geller I* limits plaintiffs to nominal damages here.

¶ 57    Defendant also relies on *Geller*'s companion case, *Brownstone Condominium Association v. Geller*, 91 Ill. App. 3d 823 (1980) [hereinafter, *Geller II*], but like Geller *I*, that decision does not help defendant. The owners of the residence under construction had built a screened area that was supported on one side by a board attached to the condominium building using nine bolts and anchors, which extended less than three inches into the condominium building's wall. *Id.* at 825. The court affirmed the trial court's ruling that there was an ongoing trespass, but that the standard for a preliminary injunction was not met, including because "there is an adequate remedy at law, if indeed there is any injury." *Id.* at 826. The court also adopted the trial court's warning that the owner of the residence under construction should not drill more holes because, "when the trespass is of more significance, it will demand and secure the attention of the Court." *Id.*

¶ 58    Unlike the nine bolts at issue in *Geller II*, this case involves more than forty encroachments, many extending two to three feet into plaintiffs' airspace. As the trial court put it: "[W]e're not talking about a piece of wood with nine nails in it. We're talking about 41 different encroachments." Moreover, unlike in *Geller II*, plaintiffs proved that they can use their airspace and that trespasses are causing injury. The trial court's findings as to the significance of the encroachments are entitled to deference. *Eychaner*, 202 Ill. 2d at 252.

¶ 59    Fourth, defendant mischaracterizes the trial court's findings about the encroachments' interference by arguing that, "in fact, the trial court found that there is no such interference." But defendant omits that, during the remedies phase of the bench trial, the trial court corrected

defendant on this very point. As the trial court immediately recognized and explained, defendant is conflating different findings about "two different causes of action" with "two different elements." For purposes of plaintiffs' nuisance claim (which is not at issue in this appeal), the trial court concluded that the encroachments were not interfering with "[t]he functionality of The Vic Theater." But the trial court made no such finding as to plaintiffs' trespass claim. Instead—in a colloquy that defendant omits from its brief—the trial court reaffirmed its extensive findings on intentional trespass and explained that, in its ruling on private nuisance, its finding on "enjoyment or use" was a finding specific to plaintiffs' use of The Vic Theatre. Thus, contrary to defendant's characterization on appeal, there was no finding that the encroachments did not interfere with plaintiffs' use of their superadjacent airspace.

¶ 60 Regardless, it is established law that one who exceeds the scope of an easement becomes a trespasser. *Duresa v. Commonwealth Edison Co.*, 348 Ill. App. 3d 90, 102 (2004). The trial court found based on the evidence that defendant exceeded the scope of the passageway easement intentionally. Nothing required the trial court to additionally find an interference with plaintiffs' use of their property, particularly given that defendant tried for years to claim an adverse property interest based on the encroachments.

¶ 61 After finding that the encroachments "are not slight" and were "intentional," the trial court ruled that injunctive relief was proper without a need to "balance the relative hardships." While defendant argues that the trial court erred and should have made findings about the cost of removing the encroachments, the trial court's ruling was correct as a matter of law. This court has held repeatedly that a trial court abuses its discretion by balancing equities when an encroacher's

conduct is intentional. *Preferred Meal Systems, Inc. v. Guse*, 199 Ill. App. 3d 710, 727 (1990); *Cullen Electric Co. v. Cullen*, 218 Ill. App. 3d 726, 733 (1991).

¶ 62    Not only was the trial court correct in declining to balance the equities, but the trial court's injunctive relief is affirmed on two additional grounds. First, defendant does not challenge the trial court's rulings regarding the scope and limitations of the passageway easement or plaintiffs' claims for ejectment. Those rulings amply support the trial court's grant of injunctive relief. See *Standlee v. Bostedt*, 2019 IL App (2d) 180325, ¶ 51 (traditional elements for injunctive relief "may be supplanted in certain circumstances, such as here, when a violation of a [property] covenant alone is cause to enjoin the prohibited activity"); *Countryside Lake Ass'n v. Hahn*, 2022 IL App (2d) 210433-U, ¶ 51 (quoting *Standlee* and explaining that "the breach of a covenant is sufficient reason to enjoin its violation and a complainant need not show substantial comparative injury," especially "where a defendant violated a covenant with prior knowledge and direct notice of the restrictions").

¶ 63    Second, the evidentiary record shows that the balance of equities strongly favors plaintiffs. The trial court found that plaintiffs could use its superadjacent airspace by building in that space, and plaintiffs presented unrebutted evidence that the value of that airspace exceeds $2.5 million. Conversely, defendant's evidence on the cost of removing encroachments was highly disputed. Defendant's expert Marc Trudeau testified that the cost would be about $1 million, including $212,441 for plumbing and drainage, $604,180 for electrical, and $203,332 for mechanical, but he was never shown an earlier estimate by defendant's in-house architect that put the cost of removing and relocating the encroachments closer to $350,000. Neither defendant nor its expert explained

why defendant's cost estimate increased by roughly three times only after plaintiffs prevailed on the liability phase of the bifurcated bench trial.

¶ 64    Plaintiffs also had no adequate remedy at law because they were threatened with the loss of their real property rights. Since 2012, defendant has been engaged in an ongoing, increasing trespass into plaintiffs' property, including with its ever-growing list of encroachments. Defendant used its ongoing, continuing trespass to advocate before the trial court for years that defendant had acquired an adverse interest in plaintiffs' property. Thus, defendant cannot credibly dispute the fact that plaintiffs faced an actual threat to their real property rights based on the encroachments, for which there is no adequate remedy at law. See *Carpenter v. Capital Electric Co.*, 178 Ill. 29, 36 (1899) (where defendant built structures 14 feet above property burdened by easement with no right to do so, court stated that "equity has jurisdiction, as the injured party has no adequate remedy at law," and "the injury complained of is one of a continuing or permanent nature, for which an action at law would not afford a complete and adequate remedy"); *United Church of the Medical Center v. Medical Center Comm'n*, 689 F.2d 693, 701 (7th Cir. 1982) ("It is settled beyond the need for citation *** that a given piece of property is considered to be unique, and its loss is always an irreparable injury."). Indeed, real property rights are so important that the court has called it an "absurdity" to suggest intruders should be permitted to remain in occupancy long enough to let adverse claims ripen. *Rosenthal v. Crystal Lake*, 171 Ill. App. 3d 428, 440 (1988).

¶ 65    Defendant cites *Oak Run Property Owners Ass'n v. Basta*, 2019 IL App (3d) 180687, in support of defendant's contention that there is an adequate remedy at law, but *Oak Run* is inapposite. In that case, one set of neighbors did not like another set of neighbors' (the Bastas')

retaining wall, but that wall sat two feet on the Bastas' side of the property line and any harm from the presence of the retaining wall could be cured with $10,000 worth of landscaping work, which the Bastas intended to do anyway. *Id.* ¶¶ 7, 73. The same is not true here, where the encroachments invade plaintiffs' airspace and defendant has used those encroachments to claim an adverse interest in plaintiffs' property, which unrebutted expert testimony values at $2.5 million. *Oak Run* cannot be read to suggest plaintiffs have an adequate remedy at law.

¶ 66                               D. *Laches*

¶ 67      Defendant argues the trial court improperly rejected defendant's *laches* defense based upon the court's findings that (1) the statute of limitations had not yet expired on plaintiffs' trespass and ejectment claims, and (2) defendant did not present any special circumstances or conduct by plaintiffs that would make it inequitable to grant plaintiffs' requested relief. Specifically, defendant argues that its defense to plaintiffs' ejectment action is valid because plaintiffs knew the appurtenant items existed but delayed in asserting their rights, which is prejudicial to defendant, who added to the already occupied south wall of defendant's building. Defendant also argues that the prejudice to it is exacerbated because plaintiffs cannot even use the space they seek to eject defendant from and suffer no loss or damages from the presence of the appurtenant items. However, as discussed above, we have affirmed the trial court's determinations that plaintiffs can use the space at issue and have suffered a loss due to defendant's encroachments.

¶ 68      We conclude that the trial court correctly applied the law governing *laches* and correctly decided against defendant on this affirmative defense. As this court held in *Cannella v. Bridgeview*, "when a claim or right is not barred by the statute of limitations period, *laches* will not apply unless

a party's conduct or special circumstances make it inequitable to grant the requested relief." 284 Ill. App. 3d 1065, 1071 (1996). While defendant asserts that this "statement is not entirely accurate," it has been the law for more than 100 years. See *Thomas v. Chapin*, 274 Ill. 95, 102 (1916) ("If appellee's rights are not barred by the Statute of Limitations, she is not barred by *laches*, unless, in addition to mere delay, there would be something in her conduct or the circumstances that would make it inequitable to permit her to assert her title.").

¶ 69     The trial court correctly concluded that defendant had not met its burden to prove *laches*. Defendant never explains what "special circumstances or conduct" would justify the application of *laches* here. Defendant seems to suggest it would not have built more encroachments had plaintiffs objected sooner, but the record establishes that defendant continued to install more encroachments not only after plaintiffs objected, but more than three years after plaintiffs filed this lawsuit.

¶ 70     Finally, barring a claim to enforce and protect property rights before the 20-year statute of limitations for adverse possession has run would be untenable, because it would place the property at issue "in a state of limbo." *Rosenthal*, 171 Ill. App. 3d at 440 ("While the intruder would have no legal right to occupy the premises during that period, the owner could not eject the intruder. *To even consider this possibility is to comprehend its absurdity.*" (Emphasis added.)). Applying *laches* in this case would be equally absurd because it would permit defendant to overburden the passageway easement and continue to encroach upon plaintiffs' property rights until defendant's unlawful occupancy ripens into adverse possession. Nothing in Illinois law permits such an unfair and unjust result, and defendant's *laches* argument is rejected.

¶ 71                                    E. Damages Award

¶ 72    Defendant argues that the evidence does not support the trial court's September 2023 order awarding $249,000 as both damages for defendant's intentional trespasses through its appurtenant items and as mesne profits[3] for ejectment of defendant's appurtenant items. According to the record, the trial court based the $249,000 award on its finding that a reasonable rental value for the airspace at issue is $30,000 for 8.3 years, *i.e.*, from the June 2015 date of plaintiffs' initial demand through the date of the September 2023 judgment. Defendant argues that plaintiffs presented no evidence that the $30,000 figure, which came from plaintiffs' June 2015 settlement counteroffer, was a reasonable rental value for the airspace. Defendant also argues that the trial court's additional award of $5,000 per month in damages if defendant fails to remove the appurtenant items after a 180-day period lacks any evidentiary support. Defendant asserts that the entire remedy devised by the trial court was arbitrary and capricious and should be reversed.

¶ 73    According to the record, plaintiffs introduced evidence at trial in support of two approaches to measuring damages. Plaintiffs' first approach was based on what it would have cost defendant to comply with the law, *i.e.*, to license from plaintiffs the right to maintain the encroachments. Defendant stipulated to admission of the June 2015 letter in which plaintiffs offered to enter a one-year limited license agreement, renewable at plaintiffs' sole discretion, that would allow defendant to maintain existing encroachments on and above the passageway in exchange for $30,000. Plaintiffs proposed the license fee as a means of obtaining reasoned compensation for defendant's

---

[3]"Mesne profits" are the property's reasonable rental value. *Miller v. Simon*, 100 Ill. App. 2d 6, 10 (1968); *Falejczyk v. Meo*, 31 Ill. App. 2d 372, 376 (1961).

use of plaintiffs' property. But defendant never accepted that proposal, never secured permission to maintain the existing encroachments, and instead proceeded to install even more encroachments thereafter.

¶ 74    Trial testimony confirmed that plaintiffs' proposal was reasonable. Plaintiffs' Mickelson testified that, in May 2019, Hergott acknowledged that removing just a series of HVAC ducts (not to mention the remainder of the encroachments) would have caused defendant to lose "rentable square feet" inside its building at a cost of "almost $30,000 a year or $2,400 a month." Defendant never rebutted this evidence, nor did it present any evidence or testimony as to what it believes an appropriate license fee would have been. For example, although defendant disclosed an expert on valuation matters, it declined to call that expert at trial. Plaintiffs' corroborated and unrebutted evidence is thus an appropriate basis for awarding damages. *Ceres Terminals, Inc. v. Chicago City Bank & Trust Co.*, 259 Ill. App. 3d 836, 858 (1994) ("Damages for wrongful possession properly include the fair rental value of the premises as well as other reasonably foreseeable costs that would not have been incurred but for such wrongful possession.").

¶ 75    Plaintiffs' second approach to calculating damages was based on the value defendant obtained through its encroachments. Plaintiffs elicited testimony from Hergott that an appropriate manner of calculating the value defendant received from the encroachments was to multiply (1) the amount of additional, rentable space inside defendant's building that was available to defendant because of the placement of encroachments outside that building, by (2) the rental value of that additional space per square foot. Plaintiffs also introduced evidence showing rental values

- 30 -

in defendant's building at different points in time. Again, defendant never rebutted this evidence—nor the methodology from its own witness—and never presented any evidence to the contrary.

¶ 76    The trial court selected the first approach, looking at what it would have cost over time for defendant to obtain a license to maintain the encroachments, *i.e.*, to rent from plaintiffs the space in which the encroachments sat. The trial court's damages award was conservative because plaintiffs' license offer did not authorize defendant to install any additional encroachments (which defendant did), and the offer was good for only one year (whereas defendant has now kept encroachments in place for nearly 12 years). Regardless, there is ample evidence supporting the trial court's calculation, and the damages awarded are permitted by law. See *Miller*, 100 Ill. App. 2d at 10 ("when there is a trespass and a tortious holding of the property," the plaintiff can recover "the reasonable rental value which represents the worth of use of the premises"); 735 ILCS 5/6-130, 6-133 (West 2022) (plaintiff in ejectment can recover rents, profits, and mesne profits for premises recovered); *Falejczyk v. Meo*, 31 Ill. App. 2d 372, 376 (1961) ("The worth of the use of the property while a trespass is continued thereon is the measure of the mesne profits recoverable as damages and may be shown by the reasonable rental value.").

¶ 77    The trial court also determined to increase the damages payable to plaintiffs if defendant did not comply with the trial court's injunction by discontinuing its unlawful use of the passageway within six months. Contrary to defendant's assertion that the increase after six months is arbitrary, the trial court again based its decision on record evidence and acted well within its discretion.

¶ 78    Trial courts have authority and discretion to ensure compliance with injunctions, and the trial court's increased damages did just that. "The inherent power of courts to compel compliance

with their orders is vital to the administration of justice." *Door Properties, LLC v. Nahlawi*, 2023 IL App (1st) 230012, ¶ 26. The trial court awarded plaintiffs no damages at all during the six-month compliance window, while defendant was supposed to be working diligently to ensure it would meet the trial court's deadline. In the event defendant failed to timely comply with the injunction, the trial court provided a prospective remedy to both redress plaintiffs' continuing injury and to compel defendant's future compliance. See *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 831 (1994) ("Courts independently must be vested with power to impose *** submission to their lawful mandates[.]" (Internal quotation marks omitted.)); *Felzak v. Hruby*, 226 Ill. 2d 382, 391 (2007) (court has authority to impose "a sanction or penalty designed to compel future compliance with a court order" as "a coercive sanction" so long as the party can avoid the penalty "by doing that which the court has ordered him to do"). The need for incentive and coercion is particularly strong as to defendant, who lied about whether and when it installed encroachments and continued to install more encroachments while litigation was pending.

¶ 79 In addition, the trial court's decision to grant defendant six months to discontinue its unlawful use of the passageway was generous. Plaintiffs' construction expert, Warren Baker, testified at trial that defendant could remove all its encroachments in as little as two months (if tenants vacated their spaces) or as long as five to six months (if tenants remained in place). Defendant did not rebut that testimony and never put in any evidence whatsoever about the time it would take to comply with the injunction. The trial court ultimately gave defendant the full six months to discontinue its unlawful use and occupancy. Having received the full six-month window

to comply, defendant cannot credibly complain about increased prospective damages if it does not comply with the trial court's order in the generous time allowed.

¶ 80                                    F. Attorney Fees and Costs

¶ 81    Defendant argues that the trial court had no proper grounds to award plaintiffs attorney fees. Specifically, defendant asserts that plaintiffs failed to provide any evidence showing that they would have spent less money in legal fees if defendant had not made misrepresentations, particularly regarding the fact that defendant had attached appurtenant items to its south wall after defendant acquired its building. According to defendant, the record indicates that about half of the 41 appurtenant items were attached to the south wall before defendant acquired its building, so plaintiffs would still have expended the same amount of attorney fees even if the trial court had granted plaintiffs partial summary judgment on the items that were installed post-acquisition because plaintiffs continued to assert—and defendant continued to contest—that the appurtenant items attached before defendant acquired its building were intentional trespasses. Defendant adds that the parties still would be arguing over ownership of the airspace, defendant's intent, and the actionability of the alleged trespass.

¶ 82    Defendant cites no authority in support of its novel limitation on courts' ability to issue sanctions, and that alone is sufficient reason to reject defendant's arguments. See *Gandy*, 406 Ill. App. 3d at 875; *Hood*, 210 Ill. App. 3d at 746. Defendant's theory is also contrary to governing law, which does not limit sanctions to the amount of fees incurred as a direct result of an adversary's sanctionable conduct. See *Eisterhold v. Gizewski*, 2022 IL App (1st) 210490 ¶ 39.

¶ 83    Plaintiffs respond that they undisputedly incurred more fees as a result of defendant's lies. Defendant asserted its second counterclaim in 2016, alleging that all the encroachments had been in place for at least 20 years, knowing that its fundamental premise was false because defendant installed new encroachments in 2013 and later. Plaintiffs contend that they incurred fees and expenses fighting that counterclaim for years, seeking discovery, marshaling evidence, and moving for summary judgment—only for defendant to abandon the claim at summary judgment and finally admit that it had built new encroachments (while still lying about how many encroachments were installed after 2012). Because defendant continued to lie about new encroachments through the liability phase of the trial, plaintiffs continued to incur fees and expenses preparing for and presenting at trial, the scope of which would have been substantially narrowed had defendant been truthful. The trial court specifically noted that it relied on defendant's false statements in rendering its summary judgment decision. Thus, defendant cannot credibly argue that its false statements had no effect on plaintiffs' fees.

¶ 84    The trial court awarded fees on three grounds. First, the trial court awarded fees pursuant to Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018) based on defendant's repeated false statements to the trial court and to plaintiffs, which began at the outset of this case and continued unabated through trial. Second, the trial court awarded fees based on defendant's intentional trespasses. Third, the trial court awarded fees pursuant to Illinois Supreme Court Rule 219 (eff. July 1, 2002) based on defendant's discovery misconduct.

¶ 85    Supreme Court Rule 137 "authorizes a court to impose sanctions against a party *** for filing a motion or pleading that is not well grounded in fact *** or that is interposed for any

improper purpose." *McCarthy v. Taylor*, 2019 IL 123622, ¶ 19. Rule 137 sanctions "are intended as a punishment against the party who abuses the judicial process." *Id.* ¶ 29. Sanctions can consist of fee-shifting, or a penalty determined by the trial court. *Eisterhold*, 2022 IL App (1st) 210490 ¶ 39. Plaintiffs needed only to show that defendant "made untrue and false allegations without reasonable cause." *Burrows v. Pick*, 306 Ill. App. 3d 1048, 1050-51 (1999). Whether to impose sanctions "rests with the sound discretion of the trial court." *Father & Sons Home Improvement II, Inc.*, 2016 IL App (1st) 143666, ¶ 58.

¶ 86    Defendant made false statements from essentially the inception of this case, and they continued unabated until trial. Hergott testified that he knew since 2013 that defendant built at least one encroachment in the passageway. Yet from 2016 onward, defendant asserted—in verified pleadings, sworn discovery responses, and more—that all encroachments were in place when defendant acquired its property. Hergott admitted in 2020 that defendant installed an encroachment in 2013 but continued to lie in his sworn declaration about whether and when others were installed. Only at trial did Hergott admit that defendant's many statements were false.

¶ 87    Sanctions were thus warranted. On appeal, defendant admits that a significant number of encroachments were attached to the south wall after defendant acquired its building, but defendant told the trial court the opposite for six years. That was not "zealous but unsuccessful" litigation. It was years' worth of lies to plaintiffs and the trial court on a core issue in this dispute. The trial court acted well within its discretion in awarding fees. See *Sterdjevich v. RMK Management Corp.*, 343 Ill. App. 3d 1, 21 (2003) (reversing denial of Rule 137 sanctions where party made allegations

"that he clearly knew were false, but still continued to level"); *Ashley v. Scott*, 266 Ill. App. 3d 302, 307 (1994) (reversing for failure to award fees for entire action).

¶ 88    Furthermore, Illinois permits recovery of fees as damages for conduct that is "wilful, wanton, malicious, or oppressive[.]" *Glass v. Burkett*, 64 Ill. App. 3d 676, 683 (1978) (citing *Himes v. Keighblingher*, 14 Ill. 469 (1853)). Whether to award fees is a matter of discretion. *Anvil Investment Limited Partnership v. Thornhill Condominiums, Ltd.*, 85 Ill. App. 3d 1108, 1121 (1980). The trial court found that defendant acted willfully and wantonly with respect to the encroachments by knowingly succeeding to many encroachments and then installing even more encroachments, including while this case was pending. The trial court also found that defendant intentionally repaved plaintiffs' property without plaintiffs' permission despite defendant's knowledge that it needed plaintiffs' permission to do the repaving. Furthermore, the trial court found that defendant intentionally trespassed by diverting water through its encroachments onto plaintiffs' property. Defendant challenges just one of those findings (as to building and maintaining encroachments), and even those limited challenges are meritless as set forth above. Defendant's pervasive, intentional trespasses constitute willful and wanton conduct and amply support an award of fees. The trial court's determination to award fees as an element of damages for willful and wanton conduct was well within its discretion.

¶ 89    In addition, Supreme Court Rule 219(b) authorizes an award of reasonable expenses and fees incurred in proving a disputed fact where the opposing party served a sworn denial of the same. *New Randolph Halsted Currency Exch., Inc. v. Regent Title Ins. Agency, LLC*, 405 Ill. App. 3d 923, 930 (2010); *Cavitt v. Repel*, 2015 IL App (1st) 133382, ¶65. The trial court ruled that

(1) "an award of attorney fees is warranted pursuant to Illinois Supreme Court Rule 219(b) based on [defendant's] improper denial of Rule 216 requests for admission of fact"; (2) "a substantial award is appropriate to compensate Plaintiffs for the additional fees and expenses they incurred as a result of [defendant's] improper denial"; and (3) "the fees the Court would award Plaintiffs pursuant to Rule 219(b) are the same fees the Court has determined to award Plaintiffs" on the other grounds addressed therein.

¶ 90     At the outset, the trial court noted Rule 219 as an alternate basis for awarding the same fees the trial court awarded otherwise. Defendant does not challenge the trial court's award of fees pursuant to Rule 219. Therefore, we may affirm the award of fees on this basis alone. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."); *Gandy*, 406 Ill. App. 3d at 875.

¶ 91     Forfeiture aside, the trial court acted within its discretion in awarding fees under Rule 219. The trial court concluded that defendant had no good-faith basis for its denials, the facts at issue were "material" and "centrally relevant[,] and the focus of much of the work done in this case." Given those findings—which fall within the trial court's sound discretion on issues of fact (*Case v. Forloine*, 266 Ill. App 3d 120, 129 (1993))—fee-shifting was proper. See Ill. S. Ct. R. 219(b) (eff. July 1, 2002); *McGrath v. Botsford*, 405 Ill. App. 3d 781, 789 (2010). The trial court also assessed the amount of fees plaintiffs incurred as a result of defendant's "improper denial" of Illinois Supreme Court Rule 216 (eff. July 1, 2014) requests for admission and awarded plaintiffs only a portion of the fees it incurred below. The trial court's determination to award fees under Rule 219 is affirmed.

¶ 92    Finally, defendant argues that plaintiffs' fees are unreasonable because this case involved only one fact witness deposition taken by defendant and four expert witness depositions (two for each party, one of which allegedly took less than 15 minutes).

¶ 93    Defendant forfeited this challenge to the fee award in the trial court. In its fee award, the trial court specifically noted that defendant failed to articulate any specific objections:

> "Defendant has failed to articulate with specificity what objections it has to Plaintiffs' fees and invoices, other than its general objection that the fees are unreasonable based on the number of attorneys working on the matter, which is insufficient and therefore waived. Defendant also did not request an evidentiary hearing."

And with respect to defendant's vague objection to the staffing of the case, the trial court specifically noted that it considered "many factors"—at least nine of which it listed in the fee award—and concluded "that the work done by Plaintiffs' attorneys was reasonable, particularly in light of the additional work required as a result of [defendant's] continued intentional trespasses and misrepresentations." Nevertheless, the trial court awarded plaintiffs only a portion of their requested fees and expenses. Defendant cannot challenge the trial court's fee award on appeal. See *Bank of America, N.A. v. Land*, 2013 IL App (5th) 120283, ¶ 32 (affirming fee award where defendants "waived their objection to the circuit court's judgment awarding [the plaintiff] attorney fees and costs").

¶ 94    Forfeiture aside, the trial court's fee award was reasonable. The decision whether to award fees rests in the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion." *Elledge v. Reichert*, 250 Ill. App. 3d 1055, 1060 (1993). As detailed in

plaintiffs' fee petition, this lawsuit was filed in 2016 and resulted in a final judgment in late 2023. During those intervening seven years, plaintiffs' counsel engaged in years of party and non-party fact discovery; extensive summary judgment briefing and argument; two rounds of expert discovery; and a bifurcated bench trial, among other proceedings. Those extensive efforts paid off, as plaintiffs obtained substantially all the relief they sought through the trial court's summary judgment order, liability judgment, and remedies judgment. The trial court took all of this into account, along with the experience of plaintiffs' counsel, the performance of those counsel (which the same trial court judge observed over the life of the case), and the prevailing rates for similar legal services in Chicago. The trial court ultimately determined to award plaintiffs less than all the attorney fees they sought, demonstrating that the trial court carefully reviewed plaintiffs' fee petition and made a determination based upon all available evidence. The trial court did not abuse its discretion in determining the amount of the fee award. *Elledge*, 250 Ill. App. 3d at 1060 (reiterating trial court's discretion in rendering a fee award).

¶ 95                                III. CONCLUSION

¶ 96    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 97    Affirmed.